## The Kansas Lumber Company v. Timothy Horrigan.

Specific Performance, *When Decreed.* When time is made of the essence of the contract, but the stipulations are not complied with and such failure not complained of, and partial compliance of the contract accepted, these will relieve the party from payment within the strict terms of the contract; and when payment is subsequently tendered within a reasonable time the specific performance of the contract will be decreed.

### *Error from Reno District Court.*

Action brought by *Horrigan* against *The Kansas Lumber Company,* to compel the specific performance of a contract alleged to have been made between the defendant and the plaintiff for the conveyance of 160 acres of land in Reno county. The defendant demurred to the plaintiff's petition upon the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled by the court at the May Term, 1885. The defendant brings the case to this court.

*Zimmerman & Taylor*, for plaintiff in error.

*Vandeveer & Martin*, for defendant in error.

Opinion by CLOGSTON, C.: The plaintiff alleges in his petition that on the 2d day of March, 1882, he entered into a written contract with defendant for the purchase of 160 acres of land in Reno county, Kansas, said contract being as follows:

"Know all men by these presents, that it has this day been agreed between the Kansas Lumber Company, of the first part, and Timothy Horrigan, of the second part, witnesseth: That Timothy Horrigan has bought the northeast quarter of section 32, town 23, range 5 west, for the sum of $800, to be paid as follows: $200, November 1, 1882; $200, March 2, 1883; $200, March 2, 1884; $200, March 2, 1885; all the above to draw interest from this date at the rate of 10 per cent. per annum. The Kansas Lumber Company agrees to give a warranty deed of the above-described land when above payments are made; and Timothy Horrigan agrees to pay all taxes that may become due on the above land. Time being the essence of this contract, Timothy Horrigan agrees to forfeit all payments made on this contract from time to time, to give prompt possession of premises when so desired to do by the Kansas Lumber Company.

"Witness our hands, this 2d day of March, 1882.

KANSAS LUMBER COMPANY.

By JOHN McCULLOCH, *Secretary.*

His

TIMOTHY X HORRIGAN."

mark.

And that he paid on the contract $200, being the first payment, at the time of the purchase, and that he failed to pay the other payments when they became payable by stipulation in the contract, but that he did pay to the defendant $47 on November 11, 1883, and on April 5, 1884, $50, and on April 12, 1884, $25; and that all of said sums were received and indorsed on said contract without complaint, and no forfeiture was sought to be taken until February 9, 1885, when defendant notified plaintiff that full payment must be made within ten days, or forfeiture would be taken. This notice was not received by

plaintiff until March 4, 1885, when he immediately went to the agent of the defendant and offered to pay the full amount due on the contract, but that the agent refused to accept the same, requested plaintiff to return within ten days, and he would notify the president of the company about it and see what they would do; that on March 13th plaintiff again went to the agent and was informed that the company would not accept the payment and make a deed for the land, and demanded possession of plaintiff of the land. Plaintiff then tendered the full amount due on said contract for the purchase, and has kept his tender good. Plaintiff further alleges that immediately after the purchase of the land he took possession, which land up to that time was wild and unimproved, and put a large part into cultivation, planted fruit and forest trees, and made other improvements thereon, and thereby made said land valuable; and that the plaintiff is still in the possession thereof, and that since said purchase railroads are building in the direction of the city of Hutchinson, near which this land is situate, and said land has thereby become desirable and has greatly increased in value.

Now the question is, on this statement of facts, can the defendant, plaintiff in error, be compelled to convey the land in controversy to the defendant in error? It is well settled that contracts for the sale of land, when time is made of the essence of the contract, are binding, and should be enforced by the court, when there are no intervening circumstances that would make the enforcement inequitable; and the general rule is that specific performance will not be decreed in favor of one who has been guilty of *laches*, either in performing his part of the contract or in applying to the court for relief. But while time is made of the essence, yet if there have been such things done between the parties in relation to the contract as to lead one party to believe, and act upon the belief, that time had been waived and that no forfeiture would be taken, since the doing of said things under such belief would make it inequitable to allow a party to take a forfeiture, it has been held, that under such circumstances the contract ought to be so mod-

ified as to make it one of sale merely. As was said by Story, J., in *Taylor v. Longsworth*, 14 Pet. 172:

"But, except under circumstances of this sort, or of an analogous nature, time is not treated by the courts of equity as of the essence of the contract, and relief will be decreed to the party who seeks it, if he has not been grossly negligent, and comes within a reasonable time, although he has not complied with the strict terms of the contract; but in all such cases the court expects the party to make out a case free from all doubts, and show that the relief that he asks is, under all the circumstances, equitable."

Now take the circumstances as alleged in this case: Is it inequitable to decree specific performance? Here plaintiff, defendant in error, neglected to make payments that he stipulated he would, but did make payments in small sums and at different times, no objection being made; plaintiff in possession improving the land, making the same vastly more valuable; land worth $800 at date of contract, but by the time forfeiture is sought to be taken the land is in cultivation, trees are planted, a time of prosperity comes, railroads are being built, and the land becomes valuable; then, when the last payment is almost due, forfeiture is sought to be taken, which, if allowed, will take not only the money paid, but with it the labor and cost of improvement. We think that to refuse to compel specific performance under such circumstances would be to lend equity to help a party take advantage of the circumstances of the defendant in error in which he has placed himself by permission of the vendor.

*Specific performance, when decreed.*

BREWER, J., said in *National Land Co. v. Perry*, 23 Kas. 142:

"When the right to a forfeiture accrued, the vendor, for the time being at least, waived it, and granted an extension. And when this further time had expired he took no steps to enforce the forfeiture, permitted the vendee, if not to bestow labor upon and improve the premises, at least to treat it as though he had an interest therein."

And so in this case the purchaser was led to believe that he had an interest in the land that would not be swept away

by forfeiture without first being notified in time to make pay-
ment. Time on all payments, except perhaps the last, had
been waived by the vendor in accepting payments after all the
other payments were long past due; and this last payment
and all unpaid balances of the defaulted payments were ten-
dered March 4, 1885, two days after the last payment was
due, and no forfeiture had been declared on that payment.

Under all the circumstances of this case, we think the court
committed no error in overruling the demurrer.

It is recommended that the judgment of the court below be
affirmed.

By the Court: It is so ordered.

All the Justices concurring.