## MOORE et al. v. KELLY.

No. 6179. Opinion Filed April 18, 1916.

(157 Pac. 81.)

1.  **JURY—Right to Jury Trial—Nature of Proceedings.** Where the action in the main is one for rescission, but the recovery of real property, the possession of which was obtained under said contract, is also prayed for, it is not error to refuse a jury trial when the controversy hinges upon the rescission of the contract, and the recovery of possession is a mere incident to the main action.

2.  **CHAMPERTY AND MAINTENANCE—Conveyance of Property Held Adversely.** Where a party is in possession of real property, but is not holding adversely to the real owners, deeds made by the owners under those circumstances are not void because made when the grantors were out of possession or had not taken the rents and profits thereof for the space of one year before such conveyances.

3.  **ADVERSE POSSESSION—Computation of Period—Notice of Hostile Possession.** Where husband and wife went into possession

of real property as tenants, and afterwards bought the improvements from their landlord, another holding title to the lots upon which the improvements are located, **held,** the statute of limitation does not begin to run in favor of either against the owner of the lots until the latter's title is repudiated or some evidence given of an intention to hold adversely to the owner.

4.   CONTRACTS—Rescission—Restoration of Consideration. A party claiming a rescission of a contract must restore or offer to restore everything of value which he has received under said contract from the other party.

5.   **VENDOR AND PURCHASER—Rescission of Contract—Restoration of Consideration.** A party entered into a contract with a second party to deed him real property on a certain date, and at the same time the second party executed a note in payment for said property. In order to rescind the contract the note must be restored to the maker, or an offer made to restore.

6.   **SAME—Waiver of Right of Rescission—Effect.** A. entered into a contract with B. wherein A. agreed, for a certain consideration to be paid at that time, to deed B. certain property. It was agreed that time was the essence of the contract and that the contract should be void at the option of A. if B. failed to pay the amount due on that date. B. went into possession of the property and defaulted in payment. A. took no steps to rescind the contract until about two years afterwards. **Held:** (a) A. waived his right to rescind by not exercising his option within a reasonable time after the default. (b) Before A. could rescind after such waiver, it was necessary that he give B. timely notice of his intention to rescind and fix a certain and reasonable time within which he would be required to perform his part of the contract. (c) After such a notice B. could avoid the rescission by complying, before the date fixed, with the terms of the contract.

7.   SAME—Rescission by Vendor—Condition Precedent—Tender of Deed. After the vendor has waived his option to rescind, before he can put the vendee in default, he must tender a deed as a condition to demanding payment, and he cannot, without such tender, declare a forfeiture.

(Syllabus by Mathews. C.)

*Error from District Court, Jefferson County;*
*Frank M. Bailey, Judge.*

Action by E. J. Kelly against M. J. Moore and others. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

The parties hereto will be designated as in the trial court.

The plaintiff, E. J. Kelly, joined by one Virgil Davis, entered into the following contract with defendant M. J. Moore:

### "Contract for Deed.

"This indenture entered into between E. J. Kelly and Virgil Davis, parties of the first part, and M. J. Moore, party of the second part, witnesseth: That the parties of the first part have this day agreed to convey to party of the second part by general warranty deed, except as against the acts of the said party of the second part, the following described property, to wit: Lot No. 13 in block 13, lot No. 14 in block 13, lot No. 15 in block 13, lot No. 16 in block 13, in the town of Harper's addition to the town of Waurika, Okla., for and in consideration of one thousand dollars, upon the following terms of payment: Cash in hand paid ———— dollars, receipt of which is hereby acknowledged, and the balance of said consideration money to be paid by the party of the second part, in installments as follows: $1,000.00 dollars on or before the 10th day of November, 1909. Said deferred payments are evidenced by promissory notes for the amounts named, and are to draw interest from date at the rate of 10 per cent. per annum until fully paid.

"Upon the terms of this agreement being fully complied with by the party of the second part, the party of the first part hereby agrees to execute and deliver to the party of the second part a general warranty deed, as herein provided, to said property, subject to all taxes, liens and incumbrances that shall become liens against said property after the date of this agreement, and the party of the second part hereby agrees to assume and pay all taxes, liens, and incumbrances.

"It is further agreed that time is the essence of this contract, and, unless said installments shall be paid as

herein provided, this contract shall be void at the option of the party of the first part; otherwise to be and remain in full force and effect.

"It is also agreed that this contract shall be the first lien on said property, and superior to all mechanics and other liens, and the grantees agree to keep said property insured for the use and benefit of the grantor.

"Signed and executed this 10th day of November, 1908."

On the 12th day of April, 1913, plaintiff, E. J. Kelly, instituted suit based upon the aforesaid contract, and in his petition alleged, in substance, that the said Virgil Davis had assigned his interest in said contract to plaintiff, and that under said contract the defendant M. J. Moore and his wife had gone into possession of the property therein described, but that defendants had failed to pay the sum of $1,000, or any part thereof, being the amount of the note given in payment for the real property described in said contract; also that defendants had failed to pay the taxes and insurance on said property. Plaintiff prayed for judgment canceling the aforesaid contract for a deed and asking that the same be held for naught and that possession of the property be restored to plaintiff.

The defendants answered by general denial, and further pleaded that at the time the contract sued on was executed, and for a long time prior thereto, they had been husband and wife and in actual exclusive possession of the premises, occupying the same as a home for themselves and family; that the defendant Ella Moore did not join in the contract, and her homestead rights were not affected or precluded thereby; that they had been in exclusive possession of the premises more than seven years next before the beginning of this action; and that the

plaintiff's alleged cause of action was barred by the statute of limitation. To this answer the plaintiff filed a general denial. At the beginning of the trial the defendants asked that the cause be tried to a jury, which request was refused and exceptions taken.

It developed at the trial that the lots in controversy were located upon a tract of land that was once the restricted allotment of a minor Choctaw Indian. The minor's guardian made application to the Department of the Interior through the Dawes Commission to unrestrictedly alienate said allotment for town-site purposes under the act of Congress of March 3, 1903 (32 Stat. c. 994, p. 982), and on September 16, 1904, permission was granted to sell the same for town-site purposes as requested and the same was sold to the aforesaid Virgil Davis and others, who took the land by joint deed, said deed being dated April 3, 1906. The tract of land was plotted into a town-site addition to the town of Waurika, and the lots in controversy passed in a regular chain of title from the original purchasers to the said Virgil Davis and plaintiff, E. J. Kelly, who entered into the contract for a deed out of which this controversy arose.

Judgment was entered for plaintiff as prayed for, and defendants prosecute this appeal.

*J. H. Harper,* for plaintiffs in error.

*Bridges & Vertrees* and *H. A. Ledbetter,* for defendant in error.

Opinion by MATHEWS, C. (after stating the facts as above). The first ruling of the court complained of is the refusal of a jury trial to defendants. The defendants based their right to a jury trial upon the fact that in his petition

plaintiff asked judgment for the possession of the real property in controversy. Ordinarily actions for the recovery of specific real property should be tried to a jury when demanded, but this action was in the main one for rescission and cancellation of a contract, one solely of equitable cognizance, wherein the litigants are not entitled to a jury trial as a matter of right. That portion of the petition praying for possession was a mere incident to the action, and followed, as a matter of course, a judgment rescinding and canceling the contract under which the party obtained possession of the property. The right to the possession of the property was not the issue up for trial, but the entire controversy turned upon whether or not the contract should be rescinded. Upon reaching a conclusion that plaintiff was entitled to a rescission of the contract, nothing further was necessary to be done but to enter an order for possession of the property obtained under the contract.

The defendants next present the proposition that the court erred in admitting over their objection the various deeds introduced by plaintiff to prove his chain of title; the defendants claiming that these deeds were void because made at a time when the grantors were out of possession of the property and had not taken the rents and profits thereof for the space of one year before such conveyance.

It appears that, while the title to the real property in controversy was still in the original Indian allottee, a third party had erected a house thereon, and that the defendant had rented this house and had been living in the same with his family some two or three years before entering into the contract in controversy, and on the 7th day of August, 1906, the said third party, for the expressed consideration

of $250, made a deed to defendant for the said house "together with whatever right, title, and interest said parties of the first part may have in and upon the land upon which said houses are located."

The evidence does not disclose what claim this third party was setting up to the lots in controversy, or whether he was making an adverse claim of any kind. As defendant executed a contract on the 10th day of November, 1908, to pay plaintiff $1,000 for the lots, it is difficult to reconcile such conduct with an adverse claim to the property. He was already in possession of the property, and had obtained a deed of some nature from his former landlord, and, being thus secure in what he now claims to have been a title to the lots in controversy, he voluntarily entered into a written agreement to pay plaintiff for the same. As long as he had never at any time repudiated plaintiff's title, or shown any hostile acts toward it, he certainly cannot claim to have held adverse possession of the property. As far as the evidence discloses, the defendants never claimed any adverse holding to plaintiff until the institution of this action. In the case of *Jennings v. Brown*, 20 Okla. 294, 94 Pac. 557, the exact question here presented was passed upon and decided adversely to defendants' contention, the court in that case quoting with approval 1 Cyc. 1044, as follows:

"The possession of a vendee holding under a parol executory contract of purchase is not adverse to that of his vendor until he has performed the conditions therein or repudiated the latter's title."

The proposition that next confronts us is that defendant Mrs. Ella Moore, wife of defendant M. J. Moore, at the time of the execution of the contract for a deed sued on

was living with her husband and family upon the lots in controversy and occupying the same as a home, and, as she did not join in the contract nor sign the same, she was not precluded thereby from her homestead rights. This would be a correct statement of the law if the facts here sustained that contention.   The evidence shows that the title to the property in controversy was at all times in the plaintiff or his predecessors.   The defendants were never vested with the actual title, and the evidence does not disclose that either of them ever claimed to occupy the premises under color of title even.   It is true on the 7th day of August, 1906, defendant M. J. Moore obtained a deed from H. B. McGee and wife to the property in controversy, but the evidence does not disclose that the said H. B. McGee and wife had a title of any nature to the property, and after this deed was obtained neither of the defendants set up any adverse claim to the plaintiff's title, but defendant M. J. Moore in a short while afterwards executed the contract for the deed in controversy, which was an endeavor to obtain the real title to the property.   Defendant Ella Moore's occupancy and tenure of the property was not such that she could legally set up any claim to a homestead interest in the property before obtaining title to the same.

We do not think the court erred in admitting in evidence the deeds from the guardian of the original allottee, nor the successive deeds in the chain of title to plaintiff. Nor do we find any merit in defendants' claim that the statutes of limitation had run in favor of defendants.

The defendants next complain that the plaintiff, neither in his petition nor in his proof, offered to return the $1,000 note executed to him by defendant M. J. Moore

at the time the contract for deed was entered into.

In 18 Ency. Pleading & Practice, 829, we find the following:

"In suits for the rescission and cancellation of contracts the court applies the familiar maxim of equity, of almost universal application, that he who seeks equity must do equity. The plaintiff will not be permitted to repudiate his contract and still retain the benefits which he has derived from it, and his desire and willingness to restore what he has received must appear in the bill or complaint; otherwise he will have no standing in a court of equity."

Section 986, Rev. Laws 1910, provides that in order to rescind a contract the party claiming a rescission must restore or offer to restore everything of value which he has received from the other party. It seems to us elementary that the plaintiff should have tendered the note both in his pleadings and proof. It would be inequitable and unfair to say that he may still retain the note and yet oust the defendants from the property for which the note was given in payment.

It will be noted that the contract for deed was to be performed on the 10th day of November, 1909, by payment upon the part of the defendants to the plaintiff of the $1,000 note, and plaintiff was then to execute a deed to the lots in controversy, and this clause appears in the said contract:

"It is further agreed that time is the essence of this contract, and, unless said installments shall be paid as herein provided, this contract shall be void, at the option of the party of the first part; otherwise to be and remain in full force and effect."

Nothing was done by plaintiff to show his election to rescind the contract until the 12th day of April, 1913, when he filed the petition in this case asking for a rescission of the contract. The defendants contend that, while it was expressly stipulated in the contract that time was of the essence of the same, plaintiff has waived his right to exercise his option to rescind by not taking advantage thereof on the 10th day of November, 1909, the date of performance, or within a reasonable time thereafter.

There is much conflict in the authorities as to the legal status and rights of parties to a contract like the one under consideration where time was expressly made the essence of the same and no step was taken in the matter until the lapse of an interim after the date of performance some of the authorities holding that a party to such contract would not lose his right under the contract to rescind at any future date merely because he did not exercise his option to do so at the date of performance, but they further hold that in order to do so at a future date, it was incumbent upon him to notify the other party that, unless the latter performed his part of the contract, he would at some reasonable time in the future exercise his option to rescind the contract. Other authorities hold that, unless the party exercises his option to rescind within a reasonable time after the date of performance, he forfeits his right to rescind, and must thereafter resort to his legal remedy for relief.

We have been unable to find where our own court has discussed this proposition except in the case of *Berry v. Second Baptist Church of Stillwater*, 37 Okla. 117, 130 Pac. 585, where the following facts were presented: A party sold certain lots to a church organization for a cash

payment and two deferred payments, due in August, 1904 and 1905. The lots were taken possession of and a church building erected thereon. The deferred payments were not met, but small payments were made at intervals until 1909, when another payment was tendered. The seller refused the same, and claimed forfeiture of the contract. The entire amount due was then tendered him. He refused to accept it, and suit was brought to enforce specific performance. The court held as follows:

"Even when time is made the essence of the contract, a party may waive a strict compliance with the stipulations with regard to time. * * *

"In this case the circumstances clearly show a waiver by the defendant of a strict compliance with the terms of the contract as to time. The church went into possession under the contract and built a house. After the deferred payments were due the defendant continued to receive partial payments without any intimation that he considered the contract forfeited. He even renewed the original contract in writing, and on the expiration of the year for which the contract was renewed he accepted a partial payment on the contract without claiming a forfeiture. The next year, when the representative of the church offered to make another payment, the defendant for the first time claimed a forfeiture of the contract. The church then tendered the full amount due, and it was refused. To refuse a specific performance would be inequitable. It has often been decided that a party may waive a strict compliance with the provisions of a contract as to the time of performance. See *Brown v. Guarantee Trust & Safe Deposit Co.*, 128 U. S. 403, 9 Sup. Ct. 127, 32 L. Ed. 468; *Thayer v. Star Mining Co.*, 105 Ill. 540. It is held in North Dakota that, in order to avail himself of a forfeiture clause in a contract, the party must promptly declare the contract forfeited when the other party fails to perform at the stipulated time. *Coughan v. Larson*, 13 N. D. 373, 100 N.

W. 1088, and authorities cited therein. And the same rule obtains in South Dakota. *Pier v. Lee,* 14 S. D. 600, 86 N. W. 642. In the case of *Kansas Lumber Co. v. Horrigan,* 36 Kan. 387, 13 Pac. 564, the facts before the court were very similar to the facts of this case, and the court decreed specific performance in favor of the purchaser."

We are of the opinion that, when the plaintiff failed to exercise his option within a reasonable time after the default upon the part of the defendant in failing to pay the note on November 10, 1909, the date of performance, this constituted a waiver of his option to declare a forfeiture and demand a rescission, and thereafter if he had desired to exercise his option to rescind the contract, as a predicate therefor he should have notified the defendants of his intention and have given them a reasonable time to avoid the rescission, in case they so desired, by complying with the terms of the contract. While undoubtedly the plaintiff had the right to claim a rescission at the time of the default, as the contract states that time was the essence of the same, yet, having failed to do so, and having permitted the same to run without such election, it would now be unfair to permit a forfeiture without requiring notice thereof and a reasonable time allowed to enable defendants to comply with the terms of the contract should they so desire. While time, in the contract under consideration, was expressly made the essence thereof, yet after it was waived by the conduct of the plaintiff in not exercising his option in a reasonable time after the date of performance, then the essentiality of time was thereby waived, and from then on time was merely material to the contract, and it could not again be made of the essence without timely notice to the other party fixing a certain and reasonable time within which he would be re-

quired to perform his part of the contract. *Gauhen v. Kerr,* 99 Iowa, 214, 68 N. W. 694; *Spolek v. Hatch,* 21 S. D. 386, 113 N. W. 75; *Basse v. Gallegger,* 7 Wis. 442, 76 Am. Dec. 225; *Hogan v. Kyle,* 7 Wash. 595, 35 Pac. 399, 38 Am. St. Rep. 910; *Keator v. Ferguson,* 20 S. D. 473, 107 N. W. 678, 129 Am. St. Rep. 947; *Pier v. Lee,* 14 S. D. 600, 86 N. W. 642; *Hanschka v. Vodopich,* 20 S. D. 551, 108 N. W. 28; *Boone v. Templeman,* 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126; *Van Dyke v. Cole,* 81 Vt. 379, 70 Atl. 593, 1103.

In the case of *Boone v. Templeman,* 158 Cal. 290, 110 Pac. 947, 139 Am. St. Rep. 126, in discussing a case very similar to the one at bar, it was said:

"Nonpayment alone does not put the vendee in default. The vendor must tender a deed as a condition to demanding payment of the price, and he cannot, without such tender, declare a forfeiture, or maintain a suit either for the whole price, or for an intermediate installment. *McCroskey v. Ladd,* 96 Cal. 459, 31 Pac. 558; *Russ v. Muscupiabe, etc., Co.,* 120 Cal. 526, 52 Pac. 995, 65 Am. St. Rep. 186; *Glock v. Howard,* 123 Cal. 18, 55 Pac. 713, 43 L. R. A. 199, 69 Am. St. Rep. 17; *Underwood v. Tew,* 7 Wash. 297, 34 Pac. 1100; *Malaby v. Kuns,* 3 Ind. 388; *Gorham v. Reeves,* 3 Ind. 83; *McCulloch v. Davidson,* 1 Ind. 419; *Cunningham v. Guinn,* 4 Blackf. (Ind.) 343, and cases cited in *McCrosky v. Ladd, supra.*"

The plaintiff at no time made any tender to the defendants of a deed to the lots in controversy. Having waived his option to declare a forfeiture at the date of performance, it is doubtless a sound legal proposition that he could not again claim the right to rescind without giving timely notice of such intention accompanied by the tender of a deed to the property. If the defendants, after such

notice and tender of deed, had still refused to perform the contract by payment of the amount due under the contract, in order to lay a complete predicate for rescission, the note itself should then have been tendered back.

It appearing that plaintiff has not complied with the necessary requisites of the equitable action of rescission, in that he has failed to give defendant notice of his intention to declare a forfeiture, and has neither tendered a deed to the property nor offered to return the note, we recommend that the judgment be reversed and remanded.

By the Court: It is so ordered.