**ANDREWS et al. v. THAYER.**

No. 8510—Opinion Filed April 2, 1918.

(171 Pac. 1117.)

**1. Vendor and Purchaser — Rescission of Contract—Equity Jurisdiction.**

Where an action is in the main for the rescission of a contract for the purchase of real estate, but the return of the purchase price is also prayed for, the action is one of equitable cognizance, the controversy hinging upon the rescission of the contract, the recovery of the purchase price being a mere incident thereto.

**2. Appeal and Error — Review—Form of Action.**

When, without objection, such cause is tried to a jury as a suit at law, and a general verdict returned, upon which judgment is rendered by the court, this court on appeal will consider the whole record and weigh the evidence, and, when the judgment of the court is clearly against the weight of the evidence, will render, or cause to be rendered, such judgment as the trial court should have rendered.

**3. Vendor and Purchaser — Action to Rescind Contract—Sufficiency of Evidence.**

Evidence examined, and held that the judgment of the court is clearly against the weight of the evidence.

(Syllabus by Rummons, C.)

Error from District Court, Oklahoma County; George C. Crump, Assigned Judge.

Action by Mabel Thayer against Calvin D. Andrews and Dora J. Andrews. Judgment for plaintiff, and defendants bring error. Reversed.

S. A. Horton, for plaintiffs in error.

L. H. Prichard and Crawford D. Bennett, for defendant in error.

Opinion by RUMMONS, C. This action was commenced by the defendant in error against the plaintiffs in error, Calvin D. Andrews and Dora J. Andrews, to rescind a contract for the purchase of certain real estate in Oklahoma county, to cancel a deed from plaintiffs in error to the defendant in error, and to recover the purchase price paid for said real estate by the defendant in error, because of fraud. Calvin D. Andrews thereafter died, and the cause was revived against Dora J. Andrews as the administratrix of his estate. The parties will be referred to hereafter as they appeared in the court below.

The cause was tried to a jury as an action at law, and among the errors complained of by the defendants are the giving and refusing of certain instructions to the jury. It is contended by counsel for plaintiff that this action was one of equitable cognizance, that the verdict of the jury was merely advisory to the court, and that the court having adopted the verdict of the jury as his findings of fact, by overruling the motion for a new trial and rendering judgment on the verdict, the cause should be treated as one in equity, and therefore all errors that may have occurred in the giving or refusing of instructions would be immaterial and without prejudice.

We are inclined to agree with the view of counsel for plaintiff. After alleging the purchase by plaintiff of the real estate from an agent of the defendants, and the false and fraudulent representations alleged to have been made by such agent to induce such purchase, and the reliance on said representations by plaintiff, and the payment of the purchase price of said real estate, relying on said representations, and an offer to reconvey the real estate to the defendants, the petition "prays that the contract of purchase of the property as above described by her (from said defendants) be rescinded, that the deed to the property herein set forth be canceled, and that she recover judgment of and from said defendants and each of them in the sum of $500, with interest." In Howe v. Martin, 23 Okla. 561, 102 Pac. 128, 138 Am. St. Rep. 840, this court says:

"A person induced by false and fraudulent representations to purchase or exchange for property has three remedies. He may, first, upon discovery of the fraud, rescind the contract absolutely, and sue in an action at law, and recover the consideration parted with upon the fraudulent contract, and in such a case he must restore, or offer to restore, to the parties sued whatever he has received by virtue of the contract; or, second he may bring an action in equity to rescind the contract, and in such a case it is sufficient for plaintiff to restore, or make offer in his petition to restore, everything of value which he has received under the contract; or, third, he may affirm the contract, retain that which he has received, and bring an action at law to recover the damages sustained by reason of his reliance upon the fraudulent representations."

In the case of Moore v. Kelly, 57 Okla. 348, 157 Pac. 81, it is said:

"Where the action in the main is one for rescission, but the recovery of real property, the possession of which was obtained under said contract, is also prayed for, it is not error to refuse a jury trial when the controversy hinges upon the rescission of the contract, and the recovery of possession is a mere incident to the main action."

The petition in the instant case is so drawn that it evidently comes within the second of the three remedies set forth in Howe v. Martin, supra, and is an action in equity to rescind the contract and restore the parties to the status quo, the recovery of the money paid by plaintiff as the purchase price of the real estate being a mere incident to the rescission of the contract, which, as is said in Moore v. Kelly, supra, is the main purpose of the action. In Carter v. Prairie Oil & Gas Co., 58 Okla. 365, 160 Pac. 319, this court held that, where an action in equity was treated in the trial court as an action at law without objection, and tried to a jury, and a general verdict returned upon which judgment was rendered by the court, this court will, on appeal, consider the whole record and weigh the evidence, and render or cause to be rendered such judgment as the trial court should have rendered. Success Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898.

This being the state of the record, it becomes unnecessary for us to consider errors assigned in the giving and refusing of instructions, but we are compelled to weigh the evidence in order to determine whether or not the judgment of the trial court is against the weight thereof. The evidence shows that the defendant Calvin D. Andrews was the owner of 40 acres of land adjacent to Oklahoma City, which he desired to plat into town lots and place upon the market; that he entered into a written contract with George B. Stone and J. W. Ward, which, in effect, gave Stone and Ward, in consideration of the expenditure of $2,000 for platting improving, and grading the property, which was known as Morris Lawn Addition to Oklahoma City, the exclusive right to sell the lots in said addition within a period of three years from October 1, 1909, the date of the contract; the said Stone and Ward having an option to purchase the entire addition at any time during the term of the contract for $35,000 and interest, and said Stone and Ward were to retain as their compensation, in event that they did not avail themselves of this option, all sums received on the sale of said lots in said addition in excess of said sum of $35,000, Calvin D. Andrews agreeing to convey the lots to the purchasers thereof upon payment of the purchase price, the minimum of which was fixed in the contract. The contract also provided for the sale of lots upon partial payments, all contracts for lots sold to be the property of Calvin D. Andrews until

the full sum of $35,000 had been paid. There are other provisions in the contract which are unnecessary to be noticed in this opinion.

The plaintiff testified that one B. G. Glover, who was employed in the real estate office of G. B. Stone, approached her in the year 1910, and endeavored to sell her lots 31 and 32, block 5, Morris Lawn Addition; that he told her that said lots were located two blocks west of St. Mary's Academy; that she accompanied Glover to look at these lots; that he drove her to a point on the prairie two blocks west of St. Mary's Academy, and almost in line with the academy and pointed out to her the lots he said he wanted to sell her; that these lots were upon high and level ground; that she informed Glover that she relied and depended upon him as to the location of the lots as well as the title; that upon her return home she decided to purchase the lots she had seen for the sum of $500; that she gave Glover a check for $150 as the initial payment upon the purchase price; that this occurred July 21, 1910. She testifies that Glover told her at that time that the lots belonged to the defendant Calvin D. Andrews. Plaintiff paid the subsequent installments of the purchase price, as they fell due, to G. B. Stone Realty Company, and on September 15, 1911, the defendants executed and delivered to her a warranty deed for the two lots. The plaintiff testified that she did not discover that the lots conveyed to her were not the lots which Glover had shown her until over three years after she made the purchase; that in the meantime she has endeavored to sell the lots, and on the occasion when she discovered that fraud had been practiced upon her she had shown the lots which Glover had shown her to a man who had agreed to buy them, and she submitted to him a deed and abstract for examination; that on the next day he returned the deed and abstract, and informed her that she did not own the lots she had shown him, and refused to proceed with the trade. She testified that she then immediately made inquiry, and discovered that the lots conveyed to her were two blocks north of the ones shown her, and lying in low and swampy ground, and of very much less value than the lots she supposed she was buying. She testified that she then tendered a quitclaim deed to the lots to the defendant Calvin D. Andrews and demanded a return of her money; that Andrews referred her to G. B. Stone, and eventually refused to make restoration. Upon cross-examination, the de-

fendants having pleaded that Glover was not their agent in making the sale to plaintiff, but that he was the agent of one H. Jacobson, who held a contract for the purchase of these lots upon installments, and who had listed them for sale with the G. B. Stone Realty Company, the plaintiff testified, upon being shown the contract for the purchase of these lots held by Jacobson with an assignment thereon to her by Jacobson, that the contract had never been delivered to her and that she had never seen it before. She said when she made the initial payment she received only a receipt and no contract, and that on the other payments made by her to G. B. Stone she only received receipts. She said that she was never told that the property had been sold to Jacobson or that she was buying his contract, and never heard of Jacobson. She said, however:

"Q. Did he give you any contract? A. If he did, they kept it down at the office. There was some sort of a contract they kept at the office, and whenever I made my monthly payments they would receipt me."

Glover testified for the defendant that he sold the lots to the plaintiff, and that he showed her the lots described in her deed; that he was employed by G. B. Stone, who had the sale of the addition in hand; that he was familiar with the location of the lots in the addition, and that the lots he showed the plaintiff were the lots he offered to sell her, and which were subsequently conveyed to her; that the lots had been previously sold to Jacobson, who held a contract for a deed; that he thought Jacobson had paid $150 on the contract; that Jacobson had listed the lots with the G. B. Stone Realty Company for sale; that, upon the purchase by the plaintiff, Jacobson executed an assignment of his contract for deed to the plaintiff, which was delivered to the plaintiff; that out of the money paid by plaintiff on the first installment Jacobson paid him a commission for making the sale to plaintiff. On cross-examination he was asked concerning his testimony at a former trial, and, while he says that he did not remember making the answers that were suggested to him by the questions on cross-examination, he persisted in his testimony that the assignment from Jacobson had been made as he testified to in chief.

Miss Lula Newkirk testified for the defendants that she was employed at the time of the transaction by G. B. Stone; that she wrote the assignment on the back of the Jacobson contract, and signed the name of G. B. Stone thereto, and that she had authority to so sign, and thinks that she gave the contract and assignment to the plaintiff, and that after plaintiff paid the purchase price in full the contract was surrendered by her and she received her deed; that Jacobson listed the lots with the G. B. Stone Realty Company for sale, and that when they were sold to plaintiff they were sold for him. On cross-examination she testified that she had no independent recollection of seeing Jacobson sign the assignment or when it was made, except as it appeared from the writing; that she believed that the contract was deliverd to the plaintiff, because it was her usual manner of doing business, and that she had no recollection how much had been paid on the lots by Jacobson, but that the books of G. B. Stone would show. The contract with Jacobson was offered in evidence; it was executed on behalf of defendants by G. B. Stone. It contained an agreement to convey to Jacobson the lots conveyed to plaintiff in consideration of the sum of $500, $50 of which was paid at the time of executing the contract, the balance to be paid at $25 per month, with interest at the rate of 8 per cent. on deferred payments. It provided, in event of default being made by Jacobson to make or complete any payment as therein stipulated, all money paid by him should be forfeited as liquidated damages, and provided that time is the essence of the contract. This contract was entered into on February 7, 1910. Indorsed on the back of the contract is the following:

"Oklahoma City, Okla., July 21, 1910.

"For value received I hereby assign and transfer to Mrs. J. D. Thayer all my right, title and interest to the within and foregoing instrument, who agrees to keep up all payments as specified during the life of this contract.

"H. Jacobson.

"Consented to by Calvin D. Andrews, by G. B. Stone."

The plaintiff was corroborated as to the representation made by Glover that the lots lay west of St. Mary's Academy, and within two blocks thereof, by a witness who heard the conversation between the plaintiff and Glover immediately before he took the plaintiff to see the lots. This is substantially all the material testimony bearing upon the issues in this case.

It is insistently urged by counsel for defendants that the judgment of the trial court is against the weight of the testimony and is unsupported by the testimony; that the evidence does not establish the agency

of Glover for the defendants; the fraud must be established by testimony clear and convincing; and that the testimony in the instant case does not so establish it. On the other hand, counsel for plaintiff insist that defendants, having received the fruits of the transaction, are bound by any representations made by their agent, and that, this being an equity case, the rules that in equity the degree of proof required to establish fraud is not so great as in an action at law, and that in equity fraud may be presumed from the circumstances of the case, apply.

The most serious question that confronts us in the consideration of this cause is not whether the evidence is sufficient to support the finding of the trial court that the plaintiff was defrauded, but whether the evidence is sufficient to support the finding that the party making the alleged fraudulent representations was the agent of the defendants and acting for them in the transaction in which such representations were made. The record in this case does not contain all the testimony that might have been presented to elucidate the controverted issues of fact. However, the burden was upon the plaintiff to make out her case, and while it may be admitted that fraud may in an equity case be presumed from the circumstances of the case, and that so high a degree of proof thereof as is necessary in an action at law is not required, yet agency cannot be presumed upon any lesser degree of proof in equity than at law.

The only evidence on behalf of plaintiff that Glover was acting for the defendants in selling these lots to her is the undisputed fact that he was employed in the office of G. B. Stone, who was duly authorized to make sale of the lots in Morris Lawn Addition, and the testimony of plaintiff that Glover told her that the defendant Andrews was the owner of the lots in question. It may be added that it is undisputed that the defendants received the sum of $500, with interest on deferred payments, for these lots, all of which, except the first payment of $150, at least, was paid by plaintiff. On the other hand, the evidence of defendants that Jacobson held a contract for a deed to these lots at the time they were purchased by plaintiff is not rebutted. There is no evidence in the record that Jacobson was in default in the payments due upon the contract, or that his contract had ever been forfeited. While the testimony is in conflict as to whether the purported assignment upon the back of his contract was ever delivered to the plaintiff or that she had any

knowledge thereof, yet it is clear that Jacobson, at the time these lots were sold to plaintiff, held a valid contract of sale for them. The authority given to Glover's employer to sell the lots in this addition must evidently have ceased as to any of the lots upon a sale thereof, so that, when the lots in question were sold to Jacobson, the authority of Stone to sell these particular lots for the defendants must have terminated, at least, until the sale to Jacobson failed in completion, or for any reason the contract with Jacobson was terminated.

That being the case, it seems clear to us that the weight of the testimony shows that when plaintiff purchased the lots Jacobson held a valid contract for deed to them, that he had listed them for resale with the G. B. Stone Realty Company, and that said Realty Company and their employe, Glover, were acting for Jacobson in making the sale. As against the evidence offered by defendants to this effect we have only the testimony of plaintiff that Glover told her that the lots were owned by the defendants, and the evidence that defendants received the balance of the purchase money from the plaintiff and executed to her a deed to the lots. As to the testimony of the plaintiff that Glover told her the lots were owned by the defendants, if that may be considered as amounting to a statement that he was acting for defendants in making the sale, the rule is elementary that agency cannot be established by declaration of the agent alone. If we consider the fact that defendants received the purchase money from the plaintiff, and the contention is made that they ratified the acts of Glover in making the sale, we must, in the absence of satisfactory evidence that Glover was acting for them in selling these lots to plaintiff, find, before they can be held to have ratified his authorized act, that they had knowledge of what had been done in the premises, and the record is entirely silent as to any knowledge of this transaction on the part of the defendants.

If the evidence in behalf of the defendants be true, and the contract of Jacobson was assigned to plaintiff and her initial payment used to return to Jacobson the money paid by him on the contract, the receipt by defendants of the subsequent installments of the purchase price paid by plaintiff would be in compliance with their contract with Jacobson as assigned to plaintiff and would give rise to no liability on the part of the defendants for any misrepresentations or fraud practiced in behalf of Jacobson.

The execution by the defendants of a deed to plaintiff stands in the same position. If plaintiff was the assignee of Jacobson's contract, upon completing the payment of the purchase price she was entitled to a deed, and defendants in executing a deed to her were only carrying out the terms of this contract with Jacobson.

The record shows that Jacobson had a contract for the purchase of these lots, and, there being nothing in the record to show that the same was not still in full force and effect at the time that plaintiff negotiated for the purchase of these lots, we think the finding of the trial court that Glover in negotiating the sale of these lots to plaintiff acted as the agent of the defendants is against the weight of the evidence, and, there being no evidence of circumstances sufficient to show any ratification of the act of Glover by the defendants, no responsibility therefor can be imposed upon the defendants.

The judgment of the trial court should be reversed.

By the Court: It is so ordered.