### STATE ex rel. v. McBEE.

No. 13100—Opinion Filed Oct. 14, 1924.

Rehearing Denied March 17, 1925.

**Public Lands — Certificate of Purchase of State Land — Cancellation for Nonpayment.**

The state, through the Commissioners of the Land Office, entered into a contract with M., evidenced by a certificate of purchase, wherein the state agreed for a certain consideration to be paid in 40 annual installments, the first installment being paid at time of issuance of certificate of purchase, to deed and convey to M. certain public land of the state. It was agreed that upon any default in the payment of principal or interest or both as specified in the contract the Commissioners of the Land Office should have the right, at their option, to declare the whole debt due and proceed to collect the same, as by law provided or to collect and enforce payment of the amount due at time of default and cancel said contract of purchase and declare the same forfeited and proceed to cancel the certificate of purchase issued pursuant to said contract of purchase and thereupon said land and improvements should escheat to the state of Oklahoma. M. held possession under this agreement for three years after making the initial payment, and only made one other payment, being the first annual interest payment. The state notified M. of her default in payment of first annual installment, also of the default in payment of second annual installment and interest, and asked for payment and notified M. that upon her failure to pay the amount due a forfeiture would be declared and the certificate of purchase canceled. M. did not respond to the notices given, but moved off of the premises and the state took possession and M. took no steps to regain possession until six years thereafter, when the state brought suit against its tenant for rents and M. filed petition of intervention, claiming rents against the state and damages to improvements as a set-off in part payment of the forty installments and interest under the purchase contract and for possession, Held, the state had authority to declare a forfeiture and cancel the certificate of purchase. Held, further, M. had abandoned her contract and waived her equities and could not be heard, in a court of equity, to claim any interest in the property.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Jefferson County; Cham Jones, Judge.

Action by the State, upon the relation of the Commissioners of the Land Office, against W. D. Griffith, for money due for rent, in which Nannie J. McBee intervened. Judgment for the intervener, and plaintiff appeals. Reversed and remanded, with directions.

Geo. E. Merritt, for plaintiff in error.

Hays Dillard and J. H. Harper, for defendant in error.

Opinion by THREADGILL, C. On January 20, 1911, the Commissioners of the Land Office of the state of Oklahoma, after proper appraisement and due notice, offered at public sale the N. E. ¼ of section 33, T. 3 S., R. 8 W., of Jefferson county, and a Mr. McBee bid in the land for his wife, Nannie J. McBee, the intervener. She and her husband and the family had been living on the land for a long time as lessees of the state, and had made valuable and lasting improvements thereon. It seems that the lease was in her name and she had the preferential right to purchase, and there being no bidders against her she took it at the appraised value of $3,200. The bid was approved and the initial payment of $160 paid, and on March 1, 1911, the state of Oklahoma and said Nannie J. McBee entered into a contract of purchase which, in substance, provided that five per cent. of the contract price should be paid upon execution and delivery of certificate of purchase, and the remainder in 40 equal annual installments, with interest at 5 per cent. payable annually, the installments and interest to be paid at same time. A purchase note was provided for, and a lien on the land and all improvements for the unpaid balance. The purchaser was to establish and maintain improvements other than fencing and tillage, and was not to sell her right except on certain conditions. The 11th paragraph of the certificate of purchase was as follows:

"That a violation of the conditions and provisions of this certificate of purchase or the laws of the state of Oklahoma under which said land was sold or any rules and regulations of the Commissioners of the Land Office by said purchaser, shall work a forfeiture of said lands and improvements and the same shall escheat to the state upon proof thereof and this certificate and all contracts be canceled and held for naught."

It was further agreed that the certificate of purchase was issued and accepted by the purchaser, "subject to all of the conditions of article 2 of chapter 28 of the laws of the state of Oklahoma for the year 1909, and chapter 168 A, Session Laws 1911."

Thereafter the note was executed for the balance due, being $3,040, and on April 20, 1912, the purchaser paid the first annual interest payment in the sum of $152, but failed to make the annual installment payment on the principal, and never made any other payments.

September 30, 1914, the plaintiff notified the intervener by letter that she had failed to live up to the contract, and, to place her account in good standing to November 1, 1914, it was necessary for her to pay $605.40, and if some satisfactory arrangement was not made by that time cancellation of the certificate of purchase would be recommended, which would mean forfeiture of the land, improvements made, and money paid. There was no response to this letter, and on November 16, 1914, the commissioners, by motion, declared the certificate canceled, and gave the purchaser further notice informing her that under the rules and regulations governing cancellation of certificate of purchase she was given 15 days from November 19, 1914, in which to pay the amount due or take an appeal from the order of cancellation. There was no response to this letter. In December, 1914, the intervener, with her family, moved off of the premises and the married son took possession. The commissioners ordered the son to vacate the premises, and in February, 1915, he moved out, leaving the premises vacant. The commissioners then rented the place to a Mr. Franks, who occupied the premises for two years 1915, 1916, and on August 28, 1917, the commissioners rented the place to W. D. Griffith, the defendant, for the years 1918, 1919, and 1920, for the sum of $337.50 per annum, and for the rentals of the last two years this action was brought.

After the intervener took possession of the premises under the purchase contract for 1911, the land was listed for taxes under the name of the purchaser, and the taxes were paid by her up to and including the first half of the year 1913, and no other taxes were paid. The land was sold for the last half of the 1913 taxes and, bought in by the county, and was not redeemed, and for the 1916 taxes it was sold to Levy Brothers, and all the taxes were paid up to and including 1918 by Levy Brothers, except probably the last half of the 1913 taxes. As to the further interest or claim of Levy

Brothers the record does not inform us and since it does not appear they were ever in possession or made any claims for rents from those in possession, it is fair to presume they abandoned all rights acquired by the tax sale. It appears from the record that the title acquired by sale to the county for the last half of the 1913 taxes was never transferred by assignment or resale to any one, and this title was still in the county at the time this case was tried, September 13, 1921.

This action was brought by the state against the defendant, Griffith, to recover rent claimed for the years 1919, 1920, and under the lease contract above mentioned. The defendant made no appearance and, under the contract, plaintiff was entitled to judgment for the sum of $337.50 for each year, with 6 per cent. interest from the date each payment was due. While the cause was pending and before the date of trial, Nannie J. McBee filed a plea in intervention claiming rents against the state for six years at $350 a year and interest on the same and for damages to the improvements on the premises, for an accounting of the rents in general, and offering to pay balance due, under the contract of purchase, after the six years' rents and damages are estimated and deducted from the balance due on said contract, and asking that plaintiff be required to execute to her a patent to said land or that she be given title by judgment of the court. The prayer of the petition being as follows:

"Wherefore, the intervener asks for an accounting as for the rents of said premises during the time the same has been occupied by the plaintiff as herein alleged and for the damages caused to said premises while occupied by the plaintiff and the sums so found to be due for said rents and damages to be applied on the said indebtedness for the remainder of the purchase price of said premises and the accrued interest thereon and for a finding, if any, what amount of said purchase price with accrued interest thereon still remains due and unpaid and the intervener here tenders and offers to pay into court any sum that may remain due upon the remainder of the purchase price of said premises and the intervener prays the further judgment that the plaintiff execute to the intervener a full deed to said premises upon her paying in full the balance of any purchase price, remaining unpaid under the finding of the court and in case the plaintiff fails and refuses to make such deed that the title to the premises be decreed to be in the intervener and the sheriff of Jefferson county being directed to convey said premises by good and proper deed of conveyance, for costs of the

action, and for such other relief both legal and equitable as to the court may seem just and proper and she will ever pray."

Plaintiff demurred to the petition of inter-. vention, which being overruled, answer consisting of general denial and pleading the facts above set out, breach of purchase contract, and forfeiture of all rights under it, and interposed a motion for judgment on pleadings, which being overruled the cause was tried to the court and jury on September 13, 1921, and resulted in a judgment for the intervener, and from this judgment the appeal is prosecuted.

1. In the trial of the case the court took the view that the acts of the Commissioners of the Land Office declaring forfeiture and canceling the certificate of . purchase were not sufficient to rescind the contract, and the same was therefore in full force and effect upon the purchaser paying the amount due on the same, and the judgment was based upon this holding of the court. The plaintiff contends that this was error.

It appears that the intervener took the view that the contract of purchase, as stated in the certificate of purchase issued by the Commissioners of the Land Office, could not be canceled for any reason and a forfeiture declared without an action in court for such purpose even if the purchaser had failed to make any payments for eight years, although she was often notified during the first two years of her delinquency and was finally warned that if she did not make satisfactory arrangements within a definite time to pay the arrears that the certificate of purchase would be canceled, and even upon her failure to respond to the warnings so given, and after the commission had ordered a cancellation and forfeiture, she was notified of the action taken and was further notified that if she would make payment of the amount due within 15 days the order would be set aside, or, if she desired, she could take an appeal to the district court, and still she could refuse and move off of the premises, after the last notice given or letter written to her for that purpose, and leave her son in possession and when the son, a few days thereafter, upon order of the commission, moved off of the premises, and she took no steps to claim any rights at that time or at any other time for six years thereafter, still by an interplea, in a suit by the state against a tenant for rents of the premises, could maintain an action against the state for possession of the premises and damages for rents for 6 years, and in the sum of $360 a year and damages to improvements which she for six years had

taken no interest in—all of which she contended for, but we do not think so.

It would appear from the facts in the case that the state had good reasons to believe from the acts of the purchaser that she had abandoned the contract and given up possession. The case presents a very different state of facts from those cited by defendant in error, particularly the case of Moore v. Kelley, 57 Okla. 348, 157 Pac. 81.

It must be remembered the contract of purchase was based upon certain conditions, one of which was annual payments of principal and interest, and it was specially agreed in the contract that for failure to make these payments the purchaser should forfeit all rights under the contract, and when. she failed for three years to make the payments and moved off of the premises without asking any forbearance or giving any excuse for her failure to the commissioners, and without paying the taxes due for half the year, 1913, and for the year 1914, and when the son moved off of the premises, upon order of the commissioners, and she made no objections by complaint or otherwise to the commissioners, and took no steps to protect any rights she now claims, they had sufficient reason to believe the contract abandoned by the purchaser, and the intervener is without any show of equity in bringing her action for restoration of rights, lost six years past.

We think the plaintiff's contention should be sustained and the case of Bartlesville Oil & Improvement Co. v. Hill, 30 Okla. 829, 121 Pac. 208, cited by plaintiff, is in point, and the rule therein announced as to forfeiture should be persuasive in this case. First paragraph of the syllabus states the facts and holding of the court as follows:

"B. and Co. entered into a written contract with L. for the sale of a town lot in Indian Territory. One-fourth of the purchase price was paid in cash and notes given in equal installments for the balance, maturing in 6, 12 and 18 months. The contract contained numerous provisions and covenants to be performed and observed on the part of L., among which was the payment of the installment notes within 60 days from the maturity thereof. It was further provided that a breach of any one of the conditions should work a forfeiture of the contract to all intents and purposes as fully, effectually and completely as if the contract had never been made. Held, that a failure to pay said installments within the time fixed by the contract forfeited as to L. and those claiming through him their rights to such lot, the failure to pay such installments being in no way attributable to B. & Co."

It must be further observed that the land in controversy was a part of the public lands of the state, held in trust by the Commissioners of the Land Office for certain definite purposes, and they are given authority to lease, sell, and convey the same for the state according to the provisions of article 1, chapter 81, Comp. Stat. 1921, and where a sale is made upon said specified conditions, and a certificate of purchase is issued stating the conditions and the purchaser, after taking possession and complying with the conditions for a time, then ceases to comply with the conditions, and his attention being called to such failure, and no response is given, and when pressed for fulfillment of conditions he moves away and takes no steps to claim any rights, the commissioners have a right to consider the contract abandoned and make an order canceling the certificate of purchase without an action in court for such purpose.

Taking this view of the case, the court does not deem it necessary to discuss the other questions raised by the briefs of the parties. The judgment should therefore be reversed with direction to set aside the judgment in favor of the intervener and render judgment for the plaintiff.

By the Court: It is so ordered.