## HALSELL v. BEARTAIL et al.

No. 12914—Opinion Filed April 1, 1924.

Rehearing Denied June 24, 1924.

(Syllabus.)

**1. Appeal and Error — Review—Conflicting Evidence.**

The true rule in determining the weight to be given the judgment of the trial court upon conflicting evidence should turn upon the question of whether or not the cause was one properly triable by the court or one properly triable to a jury.

**2. Same—Action for Interest in Land.**

An action brought for the purpose of determining the interest of plaintiffs in specific real estate, as heirs of the allottee, for possession of their respective interests therein, and to quiet title against adverse claimants, is one in which the parties are entitled to a trial by jury under section 532, Comp. Stat. 1921. In such case the judgment of the trial court is supported by the evidence, if there is evidence reasonably supporting the same.

### 3. Indians — Identity of Citizens — Conclusiveness of Enrollment Records.

The enrollment records of the Five Civilized Tribes were prepared under an act of Congress (Act June 28, 1898, 30 Stat. L. 502) which directed that "said commission shall make such rolls descriptive of the persons thereon, so that they may be thereby identified." The enrollment record, made pursuant to this act of Congress, which discloses the identity of an enrolled citizen, is conclusive evidence as to the identity of such citizen, in the absence of clear, unambiguous and convincing countervailing evidence, clearly establishing error or mistake.

### 4. Insufficiency of Evidence.

Evidence examined, and held, to be insufficient to support the judgment of the trial court.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by John Beartail and another against Pauline F. Halsell. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

Geo. S. Ramsey, Villard Martin, T. W. Leahy, J. B. Campbell, and Forrester Brewster, for plaintiff in error.

E. J. Van Court, for defendants in error.

COCHRAN, J. This is an appeal from a judgment of the district court of Okmulgee county, rendered in favor of the defendants in error, and against the plaintiff in error, decreeing the defendants in error to be the owners of, and entitled to the possession of 160 acres of land in Okmulgee county, and quieting their title to the same. The parties will hereinafter be referred to as plaintiffs and defendant, as they appeared in the trial court.

The plaintiffs assert title to the land in controversy as heirs of Nocus Hutchee, enrolled as a Creek Indian, opposite roll No. 9991. The defendant claims title to the land by reason of conveyances executed by Lila Collins and Polly Washington, who claimed to be the sole heirs of Nocus Hutchee, Creek Indian No. 9991. The sole question to be determined is the sufficiency of the evidence to support the judgment in favor of the plaintiffs. There was a Nocus Hutchee who lived and died near Pierce, Okla., in the Creek Nation, and who was the father of the plaintiffs, John Beartail and Louisa Beartail, and there was also a Nocus Hutchee who lived and died near Oktaha in the Creek Nation, who was the father of Lila Collins and Polly Washington. The plaintiffs contend that Nocus Hutchee, who was enrolled opposite roll No. 9991, and to whom the lands in controversy were allotted, was their father, and the defendants contend that he was the Oktaha Nocus Hutchee and the father of Lila Collins and Polly Washington. The plaintiffs introduced the testimony of several citizens of the Creek Nation, who testified that Nocus Hutchee, the father of John Beartail and Louisa Beartail, was a member of the Ketchapatak Town of the Creek Nation, and died after April 1, 1899, and lived and died near Pierce, in the Creek Nation; that Nocus Hutchee, the father of Lila Collins and Polly Washington, died prior to April 1, 1899, and lived and died near Oktaha, in the Creek Nation. The defendant introduced in evidence the census card of Nocus Hutchee, No. 9991, which shows that his postoffice address was Oklaha, that he was a member of Ketchapatak Town, and he was on the 1890 tribal rolls as Nocus Harjo, and on the 1895 rolls as Nocus Hutchee Dick of Ketchapatak Town, and that he died in the spring of 1904. Defendant introduced in evidence the census card of Lila Collins, which shows that she was a daughter of Nocus Hutchee Dick, enrolled as a citizen of Ketchapatak Town. Defendant introduced in evidence the census card of Polly Coffee, who is the same person as Polly Washington, and who was enrolled on the tribal rolls as a member of Ketchapatak Town, and whose father was Nocus Harjo, on the Ketchapatak rolls of 1890. It was also stipulated between the respective counsel that the court should consider as part of the evidence that Joe Simmons would testify that he and Linda Collins were married in 1902, and Nocus Hutchee was the former husband of Linda and was the father of Polly Washington, and that Nocus Hutchee was living near Oktaha at that time, and died about one and one-half years thereafter; that Jim Bullet would testify that he made application to the Dawes Commission for the enrollment of Nocus Hutchee, who was enrolled as a Creek, opposite roll No. 9991, and that he was the same Nocus Hutchee who lived at Oktaha, and who was the father of Polly Washington, and was the former husband of Linda Simmons; that Timmie Dick would testify that he was the brother of Nocus Hutchee who lived at Oktaha, who was the father of Polly Washington, and that Nocus Hutchee was the former husband of Linda, now known as Linda Simmons, and that Nocus Hutchee died some four or five years after the opening of the land office for the enrollment and allotment of Creek Indians at Muskogee, Okla., and died and was buried near Oktaha, Okla. It was further agreed that the testimony of these witnesses should be regarded and considered by the court as introduced in the regular order and should be incorporated in the record as the testimony of such witnesses. Polly Washington testi-

fied that she was a daughter of Nocus Hutchee and Cinda; that after the death of Cinda, Nocus Hutchee married Linda, and that they had one child by name Lila; that she never had any other brothers or sisters, except one brother who died when he was very young; that her father was a member of Ketchapatak Town and that they lived near Okttaha, where her father died. Several other witnesses were introduced by the defendant who testified to substantially the same state of facts. The trial court found that the plaintiffs were the children and sole heirs of Nocus Hutchee, Creek, No. 9991. The plaintiffs contend that the sufficiency of the evidence should be determined according to the law rule, and, if there is any evidence reasonably supporting the judgment of the trial court, the same should be affirmed. The defendant contends that this is an equity action, and that it is the duty of the court to weigh the evidence and, if the judgment of the trial court is clearly against the weight of the evidence, the judgment of the trial court should be reversed, and judgment rendered in accordance with the weight of the evidence. The plaintiffs' petition alleged, in substance, that the land in question was allotted to the heirs of Nocus Hutchee, deceased, and that the plaintiffs were at the time of the issuance of the patent the sole surviving heirs of Nocus Hutchee, and that defendants, without right of title thereto, have entered into the possession of said land, and have for some time mined the same for oil and gas, and have removed large quantities of oil and gas therefrom; that defendant claims some right, title, or interest in said land adverse to plaintiffs; that such pretended claims of defendant are void and without right, and that the same cast a cloud and suspicion upon plaintiffs' title. The prayer of the petition was that the court appoint a receiver to take charge of said property; and that defendant be required to fully set out their claims, if any, to said premises; that said pretended right, title, or interest claimed by defendant be declared null, void, and of no effect; that plaintiffs be declared to be the owner of the property and be awarded the possession of the same; and that an accounting be had for all oil and gas removed from said property by defendant, and that the title of plaintiffs be quieted. In Mitchell v. Gafford, 73 Okla. 152, 175 Pac. 227, it was said:

"We think, however, that the true rule in determining the weight to be given the judgment of the trial court upon conflicting evidence should turn upon the question of whether or not the cause was one properly triable by the court or one properly triable to a jury."

Section 532, Comp. Stat. 1921, provides:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided."

In the instant case, it was necessary to determine who were the heirs of Nocus Hutchee and, after determining that case, the possession of the land would necessarily be awarded to those determined to be the heirs of those holding under them. The purpose of the action was to establish the interest of the plaintiffs in the specific real estate, and to award to them the possession thereof, and to quiet their title thereto. In our opinion this was an action for the recovery of specific real property under section 532, Comp. Stat. 1921, and either party was entitled to a jury. We conclude, therefore, that the sufficiency of the evidence should be determined in accordance with the rule applied in jury cases, and if there is evidence reasonably supporting the judgment the same should not be reversed.

In Page v. Atkins, 86 Okla. 290, 208 Pac. 807, this court had under consideration a similar question, and in passing on the weight to be given to the enrollment records of the Five Civilized Tribes made under authority of the act of Congress June 28, 1898 (30 Stat. 502) said:

"The Commission to the Five Civilized Tribes was authorized and directed to make correct rolls of the citizens by blood of the tribes and in making such rolls to make them descriptive of the parties thereon so that they may be thereby identified. The commission was given access to the rolls and records of the several tribes in preparing the rolls of the citizens of the tribes. Held, the enrollment record of the commission made pursuant to the act of the Congress, considered as a whole, which discloses the identity of an enrolled citizen, is conclusive evidence as to the identity of such citizen, in the absence of clear, unambiguous, and convincing countervailing evidence clearly establishing error or mistake."

The question for our determination is, whether there is any evidence in this case reasonably supporting the finding of the trial court that the plaintiffs were the heirs of Nocus Hutchee, No. 9991. By act of Congress June 10, 1896 (29 Stat. L. 339), the commission entrusted with the enrollment of members of the Five Civilized Tribes was directed "to give due force and effect to the rolls, usages, and customs of each of said nations or tribes," and further provided "that the rolls of the citizenship of the several tribes as now existing are hereby

confirmed." The Indian Appropriation Act of 1897 (30 Stat. L. 83) provided:

"That the words 'rolls of citizenship,' as used in the act of June 10, 1896, shall be construed to mean the last authenticated rolls of each tribe, which have been approved by the Council of the Nation."

Section 21 of the act of June 28, 1898 (30 Stat. L. 502), making provision for enrollment, is as follows:

"Said commission shall make such rolls descriptive of the persons thereon, so that they may be thereby identified."

It was, therefore, the duty of the Dawes Commission in the preparation of the rolls to make them descriptive of the persons enrolled thereon and to give force and effect to the existing rolls of the various tribes. In compliance with these mandates of Congress, the Dawes Commission enrolled Nocus Hutchee opposite roll No. 9991, and as descriptive of the person who was being enrolled, gave his postoffice address as Oktaha, his tribal enrollment as Ketchapatak Town; that he appeared on the 1890 roll of Ketchapatak Town as Nocus Harjo and on the 1895 roll of Ketchapatak Town as Nocus Hutchee Dick, and died in 1904. Lila Collins and Polly Washington, John Beartail and Louisa Beartail, were each enrolled by the Dawes Commission, and in the enrollment of these members of the Creek Tribe, it was the duty of the Dawes Commission to prepare records descriptive of the persons enrolled. In doing this, it was necessary, where the person being enrolled did not appear on the tribal rolls, to determine the parents of the person being enrolled, as his right to enrollment as a member of that tribe depended upon the tribal identification of such person. In compliance with this requirement of Congress, the Dawes Commission, in enrolling Lila Collins, found that her mother was Cinda and her father was Nocus Hutchee Dick, both of the Ketchapatak Town. In enrolling Polly Washington the commission described her as a person appearing on the tribal rolls and a member of Ketchapatak Town, and whose father was Nocus Harjo on the 1890 roll and who belonged to Ketchapatak Town; that her mother was Cinda. In enrolling John Beartail and Louisa Beartail, neither appeared on the tribal rolls, but both belonged to Tokpofka Town, and their father's name was given as Nocus Hutchee of Cusseta Town, and their mother was Elisa Timothy of Tokpofka Town. The plaintiffs contend that Nocus Hutchee, No. 9991, could be the Nocus Hutchee referred to in the matter of the enrollment of John Beartail and Louisa Beartail, or in the enrollment of Lila Collins and Polly Washington, but that the parol

evidence shows that the enrolled Nocus Hutchee was the father of John Beartail. With this contention we cannot agree. It is true that the enrollment record of Nocus Hutchee is not sufficient to determine whether he was the father of the plaintiffs or the father of Lila Collins and Polly Washington, but, when his enrollment is considered in connection with the enrollment of the other parties above mentioned, it clearly appears that the Nocus Hutchee, who is enrolled opposite No. 9991, was the same person who appeared on the tribal rolls of 1890 as Nocus Harjo, and on the tribal rolls of 1895 as Nocus Hutchee Dick, and a member of the Ketchapatak Town, and that the father of Lila Collins and Polly Washington was this same Nocus Hutchee, who had his tribal enrollment as Nocus Harjo on the 1890 rolls and Nocus Hutchee Dick on the rolls of 1895, and who was a member of the Ketchapatak Town. It further appears that the father of the plaintiffs did not appear on the tribal rolls of 1890 or 1895, but he was a member of Cusseta Town. In Porter v. U. S., 260 Fed. 1, the Circuit Court of Appeals approved the conclusion of the District Court, in which it was said:

"However misleading, or however far from the truth may have been the information secured in the course of such investigation, still the person whose right to enrollment was being investigated, was the individual represented by the name on the tribal roll. * * *"

In the instant case, it is clear that the Dawes Commission was investigating the right to enrollment of the person who appeared on the tribal rolls of 1890 as Nocus Harjo, and on the tribal rolls of 1895 as Nocus Hutchee Dick, and who was a member of Ketchapatak Town, and that was the person enrolled, and it further appears that the commission found that this person was the father of Lila Collins and Polly Washington. Following the rule announced in Page v. Atkins, supra, this record evidence is conclusive as to the indentity of the various members of the tribe interested in this litigation, in the absence of clear, unambiguous, and convincing evidence clearly establishing error or mistake. In the instant case there is no evidence of this character in the record. The testimony introduced by the plaintiffs as to the identity of the enrolled Nocus Harjo and the father of the plaintiffs is very unconvincing and unsatisfactory without regard to the record evidence presented, and does not amount to clear and convincing evidence sufficient to overturn these records, which form the basis of the rights of each of the claimants to participate in the tribal property and funds. In these circumstances, the judgment of the

trial court should be reversed, and the cause remanded, with directions to grant a new trial, and it is so ordered.

JOHNSON, C. J., and HARRISON and MASON, JJ., concur. NICHOLSON, J., concurs in the conclusion.