Note.—See under (1) 22 C. J. p. 1102 §1459; p. 1129 §1500. (2) 40 C. J. p. 1069 §685 (Anno). (3) 40 C. J. p. 1065 §681. (4) 40 C. J. p. 1062 §680; (5) 40 C. J. p. 1062, §680; p. 1066 §682. (6) 40 C. J. p. 1689 §712; p. 1693 §715. (7) 40 C. J. p. 1089 §§711, 712. (8) 40 C. J. p. 1090 §713; p. 1093 §715. (9) 40 C. J. p. 1100, §725. (10) 40 C. J. p. 1091 §713. (11) 40 C. J. p. 1022 §722. (12) 40 C. J. p. 1089 §723. (13) 40 C. J. p. 1098 §723. (14) 40 C. J. p. 1092 §714.

---

## ZWIRTZ v. DORL.

No. 16482—Opinion Filed April 13, 1926.

Rehearing Denied Feb. 22, 1927.

**1. Courts—Jurisdiction of District Court—Quieting Title and Determination of Heirship.**

The district court is a court of general jurisdiction, clothed with power and jurisdiction to determine title to real property; and as such has power and jurisdiction to determine every question necessary to be determined to finally adjudicate in whom title vests, including the question of whether or not a claimant is an heir of a deceased person, or whether such deceased person died intestate.

**2. Appeal and Error—Trial—Harmless Error — Misdirection of Jury in Case of Equitable Cognizance.**

Where a plaintiff's right to recover depends primarily upon the cancellation of instruments, the case is one of equitable cognizance; and if questions of fact are submitted to a jury, the verdict or answers of the jury are advisory to the court, and may be adopted or discarded by the court; and alleged misdirection of the jury, or alleged erroneous instructions to the jury in such a case form no proper basis for assignment of error and present nothing for review on appeal.

**3. Deeds—Deed by Aged Grantor to Stranger to Blood—Presumptions and Burden of Proof as to Validity.**

Where an aged grantor, in the last hours of her life, executes a conveyance purporting to convey her entire estate without any, or grossly inadequate, consideration, to a stranger to the blood of the grantor, a court of equity will presume that the grantor did not appreciate the consequences and effect of the grant, and the burden is cast upon the claimant under the conveyance to overcome this presumption by showing that the grantor had the benefit of proper, independent advice concerning the proposed grant.

**4. Same—"Proper, Independent Advice" to Grantor.**

And, "proper, independent advice," in this connection, means that the grantor had the benefit of previously conferring privately and fully with reference to the proposed grant, with a person disassociated from the interests of the grantee and competent to properly and impartially advise such grantor of the consequences and effect of the proposed grant.

**5. Appeal and Error—Sufficiency of Evidence in Equity Case—Burden of Showing Error.**

Upon appeal in an equity case, the appealing party takes the burden of showing that the findings and judgment of the trial court are against the clear weight of the evidence; and where such burden is not maintained by the appealing party, the reviewing court will refuse to disturb the findings and judgment of the trial court because of alleged insufficiency of the evidence.

**6. Judgment Sustained.**

Record examined, and held, that the record supports the judgment; and that it should be affirmed.

(Syllabus by Shackelford, C.)

Commissioners'. Opinion, Division No. 4.

Error from District Court, Pawnee County; Edwin R. McNeill, Judge.

Action by Gustav Dorl against Louisa Zwirtz. Judgment for plaintiff, and defendant appeals. Affirmed.

Matson & Mathers and Wilkinson & Bell, for plaintiff in error.

Wilcox & Swank and McCollum & McCollum, for defendant in error.

Opinion by SHACKELFORD, C. The plaintiff in error was the defendant in the trial court, and the defendant in error was plaintiff. The parties will be referred to herein as plaintiff and defendant, as they appeared in the court below.

The plaintiff brought his action against the defendant to cancel a deed executed by Magdalena Dorl, purporting to convey to defendant, Louisa Zwirtz, a quarter section of land in Pawnee county, described as the northeast quarter of section 18, township 21 north, range 6 east I. M., and to quite title thereto as against defendant, and for possession. The grounds for cancellation of the deed are, in substance and effect, that the deed was procured by fraud and undue influence of the grantee and her son, and without any consideration whatever. The facts out of which the controversy grew are, in short: That the land involved was homesteaded by the husband of Magdalena Dorl, but, the husband having died, the land was afterwards patented by the government to the widow. She was a German woman, uneducated in the English language, being unable to write the language, and could speak and understand it very imperfectly. She was the mother of two children, one Ida Dorl, and the plaintiff, Gustav Dorl. The daughter went away several years ago, and has not been heard from, and it is uncertain whether she is living or dead. The land involved was the only estate of Magdalena Dorl. The mother and son (the plaintiff) lived upon the land for years as their home, until the son was about grown, when they left the land in the hands of a lessee, and both mother and son went to work to earn a livelihood as best they might. It appears that the defendant, Louisa Zwirtz, was also a German woman, and she and the plaintiff's mother were acquaintances; and the mother, for some years before her death, lived with defendant. She died about 9 p. m., on the 25th day of March, 1924. It seems that in the afternoon of the day she died the defendant procured the deed from Magdalena Dorl, purporting upon its face to convey title to the land to the defendant. Shortly after the death of Mrs. Dorl, the plaintiff found that such a deed existed and had been recorded, and the suit followed to cancel the deed and to quiet title as against defendant, the claimant under the deed. The plaintiff filed an amended petition, making Ida Dorl, and her unknown heirs parties defendant. The defendant demurred to the amended petition. The demurrer was overruled and the defendant answered. The answer admits the execution of the deed, and relies upon it and asserts title thereunder; and denies all wrongdoing in procuring the deed. The cause was called for trial on the 10th of December, 1924, and a jury was impanelled, and the cause submitted, resulting in a finding by court and jury in favor of the plaintiff; and judgment was entered accordingly.

The defendant brings the case here for review. The first proposition presented for reversal is that the trial court had no jurisdiction of the subject-matter or of the parties.. The contention made is that before the plaintiff could prosecute the action, there must have been a determination in the county court as to who are the heirs of Magdalena Dorl, and whether she had died intestate. That since there was no determination of heirship of Magdalena Dorl in favor of the plaintiff, and the question of intestacy was not determined in the county court, the plaintiff had no legal right to prosecute the action. This contention is unsound. It seems that the statutory proceeding for administration of the estate of Magdalena Dorl might have been prosecuted, and the question of heirship and intestacy there determined, had the parties chose to proceed in that way. Had such a procedure been adopted, it seems that still the plaintiff would be required to prosecute his action in the district court to determine the question of title to the land as between him and the grantee of his mother. It seems that had the matter of heirship been determined in the county court, the determination would be conclusive unless appealed from, while such determination was an open question in the suit filed in the district court. We know of no statute or court decision, or constitutional provision, which has the effect of denying the plaintiff the right to sue to quiet title in himself, to his mother's property as against the defendant without first going into the county court and having himself as the son of Magdalena Dorl, declared to be her heir, or one of her heirs, or having the question of intestacy determined. It seems that the statutes of descent and distribution fix what kindred are heirs of a deceased person. There is no contention made that the plaintiff is not the son of Magdalena Dorl. If he is her

son, the statute makes him her heir, or one of her heirs. The district court has jurisdiction to determine in whom title to real property may be vested; and is necessarily clothed with power and jurisdiction to determine every question leading up to a final determination of where the title vests. The district court has jurisdiction to determine title to real property (sec. 10, art. 7, State Const.), and the county court has no jurisdiction to determine title to real property (sec. 12, art. 7, State Const.). Homer v. Lester, 95 Okla. 284, 219 Pac. 392. It seems certain that the district court of Pawnee county had power and jurisdiction to determine every question necessary to be determined in deciding in whom the title to the Magdalena Dorl land rested; and, among other things, to determine whether the plaintiff was her heir, or one of her heirs; and whether or not she died intestate. The contention that it was incumbent upon the plaintiff to go into the county court and have himself declared the heir of his mother, and have it determined whether or not she died intestate, is not supported by any authority so far as we are advised.

The defendant complains that the court misdirected the jury. This suit was brought to cancel a deed and to quiet title, and for possession of real estate. If the deed is valid the plaintiff's action cannot be maintained. The first step to a recovery by plaintiff is to set aside the deed made by his mother purporting to convey title to the land to the defendant. All the claim the defendant has to the land arises under the deed attacked by the plaintiff. If it withstands the attack, plaintiff must fail in his action; and if the deed is stricken down, the judgment quieting title and for possession follows as of course. It seems to be elementary that in such a suit, rules of equity apply, that is, it is a suit usually denominated an action in equity as differentiated from an action at law. In such a case there is no question of fact which the court is required to submit to a jury. If a jury is impaneled in such case, any verdict it may return is advisory only to the court. The court may, or may not adopt such verdict as his own finding. Hogan v. Leeper, 37 Okla. 655, 133 Pac. 190; Matthews v. Sniggs, 75 Okla. 108, 182 Pac. 705. It seems to be well settled in this jurisdiction that in such case assignments of error cannot rightly be predicated upon alleged misdirection by the court to the jury, or upon an alleged erroneous instruction given to the jury. Galer et al. v. Berrian et al., 43 Okla. 303, 140 Pac. 155; Success

Realty Co. v. Trowbridge, 50 Okla. 402, 150 Pac. 898; City of Chickasha v. O'Brien, 58 Okla. 46, 159 Pac. 282. The rule announced in those cases seems to render it unnecessary for the court here to examine the instructions complained of.

The defendant contends that the court erred in excluding competent and relevant evidence, and that the findings and judgment are against the clear weight of the evidence. It seems that certain evidence was offered by the defendants, but was excluded from the jury. It was before the court, however, and was incorporated into the record here presented. It is a well recognized rule, that upon appeal in an equity case the burden is upon the appealing party to show that the findings and judgment of the trial court are against the clear weight of the evidence. Also, in such case it becomes the duty of the reviewing court to examine and weigh the evidence.

The evidence in this case is rather voluminous. It seems that the real defense of the defendant was not disclosed by her answer, but from the evidence of the defendant we learn that she contends that several years before the death of Magdalena Dorl, she and Mrs. Dorl entered into an oral agreement, by which Mrs. Dorl agreed to give defendant the land in exchange for a home with defendant, decent Christian burial at her death, and to pay funeral expenses, and erect a $100 monument at her grave; all of which defendant contends she carried out; and that a few hours before the death of Mrs. Dorl, she (Mrs. Dorl), while in full possession of her mental faculties, freely and voluntarily made the deed conveying title to the land to defendant, and delivered the deed in her lifetime. The evidence offered by the defendant tends to establish such a state of facts.

The plaintiff's evidence tends to show that the land involved belonged to Mrs. Dorl, and that plaintiff was her son, the husband and father being dead, and that another child, plaintiff's sister, had disappeared. In the evidence is a somewhat detailed history of the struggle of plaintiff's mother and the two children to remain upon the land and make a living there against the adversities of early life in Oklahoma, life in a dugout, storms that swept away their improvements, and lack of ability to properly till the soil. It seems that later the mother leased the land and the family moved away and both mother and son worked at ordinary labor to earn a livelihood. Through it all the old mother

seems to have clung tenaciously to this one piece of property, her sole estate, except, perhaps, a small amount of money, until almost the very hour of her death. It seems that the defendant, also a German woman, and plaintiff's mother were acquaintances, and some years before Mrs. Dorl's death, she lived at the same house with the defendant and defendant's son, one Leo Zwirtz. During the time plaintiff's mother was residing with defendant and her son, she received small sums of money from agricultural leases on her land, and some money as bonus for oil and gas lease and delay rentals; also she worked up until a short time before her death, earning a weekly stipend of from $6 to $10. A short time before her death she seems to have had a few hundred dollars in cash, but it had disappeared and was not found after her death. It seems that during the time Mrs. Dorl was about the defendant, or a good deal of the time, plaintiff, her son, sent her meagre contributions of money. From in 1916 until in 1923, her receipts from her farm amounted to around $2,000, and this money was supplemented by her own earnings and by her son's contributions to her. The record, however, does not show with definiteness just what amount the mother earned, or the son contributed to her. It seems to be made plain by the record that defendant herself depended upon her own personal earnings and the earnings of her son, Leo Zwirtz, for a living for the family. Neither the defendant nor her son owned any property of any consequence. It is a reasonable inference from this record that plaintiff's mother was better fixed financially than were defendant and her son. This being so, the question seems to arise as to why the plaintiff's mother should enter into an oral agreement with the defendant to furnish her a home while living, for funeral expenses at her death, and for a monument at her grave after burial. The reasonable inference to be drawn from the evidence is that no such agreement was ever entered into, although the defendant and her son testified that such an arrangement was made. There seems to be some doubt, at least, as to whether it was defendant's money that paid the funeral expenses or for the monument. The plaintiff's mother had a few hundred dollars shortly before her death, but it is not explained what went with it, except that she perhaps lost it. The plaintiff's mother, no doubt, had frugal habits, and her wants were few and simple, and her income from the farm, agricultural rentals, oil lease money, and her own earnings, and her son's contributions,

went a long way with her. The mother and her son did not see each other often, but it seems there was never any break between them, and that they exchanged letters, and when they saw each other they were affectionate toward each other. There is no substantial evidence in the record that defendant and plaintiff's mother ever entered into the agreement relied upon by defendant, except the testimony of defendant and her son. It seems that under the circumstances presented, a court of equity should scrutinize carefully the claim made and the evidence upon which it rests.

Up until the very day of the death of this old German woman, there seems to be almost nothing on which the defendant could base her claim that grantor named in the deed should give the defendant her sole and only property to the exclusion of her kindred. It is true that some statements were put in evidence that the old mother intended to give her land to defendant, but these statements are offset by other statements made by her that her property would be left to her kindred. The record further tends to show that the plaintiff's mother was about 72 years old at her death, and in the last days of her life had grown physically very weak, and had been confined to her bed; and although the defendant knew the whereabouts of her son, the plaintiff, he was not advised of her condition until the next day after her death, when defendant and her son seem to have had no difficulty in reaching him. On the last day of her life she was surrounded by the defendant, her son, and such others as they saw fit to call in. It appears that something was said about a deed to the property. The defendant would have us think that the old German mother herself introduced the subject. It may have been that she did. It seems from what they say that the old mother wanted the counsel and advice of an old lawyer friend, and wanted him sent for; and that the lawyer might have been easily reached by the telephone, but this was not done. The son of defendant procured the abstract of title to the land, and went to the lawyer's office and had him prepare the deed for the old sick woman to execute. The defendant's son then got a notary and went to her bedside. She called for her advisor, but he was not there. A stranger had appeared in his stead. The deed was signed by mark, and the acknowledgment was taken, and the deed placed in the mail by defendant or her son, to be recorded, all within the hour: and in an hour or two afterwards the plain-

tiff's mother expired. It seems that the old woman had a right to be advised by counsel of her own choosing. Was she advised that the instrument she acknowledged had the effect of passing title to her entire estate to a stranger to the family; and did she realize and know that fact, and that the instrument could not be revoked? Nobody seems to have told her that. Did she know that the death angel then hovered over her? The doctor himself seems not to have known that death would result while the evening was still young. Did she understand that the instrument she signed by mark would effectually disinherit her son, upon whom she lavished her affections? It seems that *nobody so advised her*, although she had a right to know that would be the effect of her act. If she knew it the fact does not appear in this record.

It appears from the record that a year or two before the death, there was some oil excitement in the neighborhood of this land, and persons tried to buy the royalty interests from her. Defendant's son seems to have interested himself in the matter, and on one occasion turned away a prospective buyer with the statement that she wanted $100,000 for a half interest in the royalty, a prohibitive price; and the old woman did not see the buyer. Some other circumstances are presented leading to the legitimate inference that the old woman was more or less under the domination of defendant and her son.

If undue influence and duress were the sole grounds for the cancellation of the deed, there might be some doubt. If failure of consideration were the sole ground for cancellation, it might with some force be argued that the evidence was insufficient. If a fiduciary relationship existing between the grantor and grantee were the sole ground of demanding close scrutiny of the transaction, the evidence is slight. But, in this record, there is an accumulation of facts and circumstances that renders it doubtful whether the old German mother ever made the oral agreement with defendant, which defendant claims culminated in the execution of the deed; or whether plaintiff's mother rightly understood the legal effect of the instrument upon which she placed her mark and acknowledged as her deed.

It was held in Post v. Hagan (N. J.) 65 Atl. 1026, in a somewhat similar case, that a court of equity, moved by the apparent improvidence of a gift or grant, will presume that the grantor did not appreciate the consequences of his apparent voluntary act, and that the burden was cast upon the grantee to overcome this presumption by showing that the grantor had the benefit of proper, independent advice. In that case the grantor and grantee were parent and child. Here the grantee was a stranger to the blood of the grantor. The grantor sent for the lawyer she knew, and a stranger was substituted by the grantee or her son. She had no proper, independent, disinterested advice. In the case cited the court held that:

"'Proper independent advice' in this connection means that the donor had the preliminary benefit of conferring fully and privately upon the subject of his intended gift with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidentially as to the consequences to himself of his proposed benefaction."

Substantially the same doctrine had been announced in an earlier case before the New Jersey court. Pyroni v. Corrigan, 20 Atl. 227. These cases were followed by our own court in Flowers v. Flowers, 94 Okla. 134, 221 Pac. 483.

In the instant case the trial court found the issue in favor of the plaintiff, and rendered judgment in his favor and against defendant. We have carefully scrutinized the contentions of the appealing party in connection with the record, and conclude that such appealing party has failed to sustain the burden cast upon her to show that the findings and judgment of the trial court are against the clear weight of the evidence. To the contrary we think the record amply supports the judgment.

We have examined all the assignments of error, and find no error requiring a reversal of the judgment. The applicable equity rule is so well fixed, and has been so many times announced, that it is not necessary to repeat it here, or to cite the cases.

The judgment is affirmed.

By the Court: It is so ordered.

Note—See under (1) 15 C. J. p. 1004 §418. (2) 4 C. J. p. 1040 §3025; 9 C. J. p. 1159 §4; pp. 1257, 1258, §198; p. 1258 §200; 10 R. C. L. p. 534; 2 R. C. L. Supp. p. 1017; 4 R. C. L. Supp. 667. (3) 18 C. J. p. 423 §502; p. 427 §511. (4) 18 C J. p. 427 §511. (5) 4 C. J. p. 777 §2727; p. 900 §2869; 8 R. C. L. p. 1033. (6) 4 C. J. p. 1129 §3122.