ALLEN et al. v. JONES.

No. 26548. Feb. 25, 1941.

*110 P. 2d 911.*

Johnson & Jones, of Bristow, for plaintiffs in error.

Cheatham & Smith, of Bristow, for defendant in error.

BAYLESS, J. This action was brought by the plaintiff, Grace Allen Jones, against the defendants, Jesse Allen and Lizzie Allen, for the recovery of certain land in Creek county allotted to her father, Abraham Allen, for rents, and for the cancellation of certain deeds alleged to have been procured by the defendants, who were the father and mother of Abraham Allen, by fraud and undue influence, and without consideration, and to have defendants declared trustees for plaintiff as to such lands. Defendants admitted that they were in possession of the land under the deeds sought to be canceled, but denied that the deeds were procured by fraud or undue influence, or that the consideration paid therefor was inadequate, or that they held the land as trustees. They also set up the statute of limitations as a defense to the action. The trial court submitted the case as a law action to a jury, which returned a verdict for defendants. Thereafter the trial court sustained plaintiff's motion for judgment notwithstanding the verdict, holding that the case was one in equity, and rendered judgment for plaintiff as to 120 acres of the land, and for defendants for 40 acres. From this judgment defendants appeal. Reversal of the judgment is sought on three grounds, which will be disposed of in order.

1. Defendants first contend that the action was primarily for the recovery of specific real property, and was therefore properly triable to a jury. Numerous decisions of this court are cited to support this contention. Plaintiff asserts that the action is one of equitable cognizance, and likewise supports her argument with numerous citations from the decisions of this court. While formerly some confusion existed as to whether cases of this nature, involving both equitable and legal relief, were triable at law or in equity, the distinction is now well established in this state by two lines of decisions.

The argument of the defendants on this point arises mainly out of the allegations of plaintiff's petition. In the first cause

of action the plaintiff alleges that her father was the owner of the land at the time of his death and she as his sole heir is the owner thereof, that defendants are wrongfully in possession and she is entitled to possession. In this cause of action no issue of title is presented and no relief of an equitable nature is asked. It is a plain action for the recovery of the possession of specific real estate. In the second cause of action a recovery of the rents and profits is sought, and this is a law action only. If these were the only allegations tendered, the defendants' demand for a jury would be rightful. However, in the third cause of action the plaintiff substantially pleads all of the facts as set out herein and asserts a right to relief therein that is equitable. By these allegations an issue of title is presented, and the cancellation of certain conveyances is sought. If these conveyances are good, they are effective to destroy all pretense to title in plaintiff, as assumed by her in causes of action 1 and 2. The whole aspect of the lawsuit is changed when cause of action number 2 is considered. It is apparent at once that if the plaintiff cannot procure the cancellation of the conveyances she attacks, she has no title and cannot recover possession of the specific real estate nor can she recover the rents and profits. As pointed out in Moschos v. Bayless, 126 Okla. 25, 258 P. 263, if the equitable relief sought so completely overshadows the incidental legal relief that legal relief can only be proper if the equitable relief is granted, the action is equitable in nature insofar as the trial and determination of the issues are concerned. The plaintiff contends this action is equitable in its dominant aspects and that a jury is not a matter of right in that aspect. Due to the manner in which the parties have raised and presented this matter, and the uncertainty that existed in the trial court's mind, we discuss this question of law again and adhere to the conclusion that we thought was clearly established by our prior decisions.

(a) The line of decisions holding that the parties are entitled to a jury trial consists of cases where the plaintiff or cross-petitioning defendant claims legal title and possession as an heir, devisee, or otherwise, and where the party in possession claims title under a conveyance that never became effective, as where his deed was never delivered or where his deed was a forgery, or where the grantor in his deed was totally incapable of making a deed by reason of minority, adjudication of incompetency, or restrictions imposed by law. In these cases the gravamen of the action is to establish the facts on which title and right to possession are based. The equitable doctrine of rescission is in no way involved in such cases. Mitchell v. Gafford, 73 Okla. 152, 175 P. 227; Gill v. Fixico, 77 Okla. 151, 187 P. 474; Halsell v. Beartail, 107 Okla. 103, 227 P. 392; Lively v. Butler, 108 Okla. 225, 236 P. 18; Aldridge v. Anderson, 115 Okla. 131, 240 P. 99 (suits alleged heirs); Baldridge v. Sunday, 73 Okla. 287, 176 P. 404; Fitzgerald v. Lightfoot, 180 Okla. 598, 71 P. 2d 707 (forged deed, execution denied); Likowski v. Catlett, 130 Okla. 71, 265 P. 117 (deed of incompetent); Abrams v. Neal, 178 Okla. 158, 61 P. 2d 1103 (deed not delivered).

(b) The second line of decisions, holding the action one in equity in which the parties are not entitled to a jury, is where a party out of possession sues one in possession to cancel a conveyance, under which the party in possession has legal title, and also seeks rescission because of fraud, mistake, duress, or undue influence practiced in procuring the deed, or on the theory of a constructive or resulting trust, or any other theory equitable in its nature. In such cases it is held that the gravamen of the action— the paramount or controlling question— is the right to cancel the deed and reinvest title in the complaining party, from which possession follows as an incident to equitable relief. Mosier v. Walter, 17 Okla. 305, 87 P. 877; Watson v. Borah, 37 Okla. 357, 132 P. 347; Mathews v. Sniggs, 75 Okla. 108, 182 P. 703; Warner v. Coleman, 107 Okla. 292, 231 P. 1053; Chouteau v. Hornbeck, 125 Okla. 254, 257 P. 372; Harjo v. Chilcoat, 146 Okla. 62, 294 P. 119 (deed pro-

cured by fraud); Maas v. Dunmeyer, 21 Okla. 434, 96 P. 591 (fraud and insanity); McCoy v. McCoy, 30 Okla. 379, 121 P. 176 (fraud—resulting trust); Hogan v. Leeper, 37 Okla. 655, 133 P. 190 (duress—undue influence); Oklahoma Trust Co. v. Stein, 39 Okla. 756, 136 P. 746 (deed void for champerty); Hartzog v. Berry, 45 Okla. 277, 145 P. 328; Moore v. Kelly, 57 Okla. 348, 157 P. 81; Tobin v. Gantt, 78 Okla. 73, 189 P. 170; Black v. Donelson, 79 Okla. 299, 193 P. 434 (rescission and cancellation); Williams v. Diesel, 65 Okla. 163, 165 P. 187; Smith v. Williams, 78 Okla. 297, 190 P. 555 (void deed by restricted Indian); Probst v. Bearman, 76 Okla. 71, 183 P. 886 (injunction and cancellation); Zwirtz v. Dorl, 123 Okla. 284, 253 P. 75 (total lack of consideration—fraud—undue influence); Newbern v. Farris, 149 Okla. 74, 299 P. 192 (resulting trust); Harris v. Davis, 170 Okla. 35, 38 P. 2d 562; Lee v. Terrell, 170 Okla. 310, 40 P. 2d 10 (guardian's deed alleged void); Ball v. Fleshman, 183 Okla. 634, 83 P. 2d 870 (insanity and forgery); Marling v. Burlington, C. R. & N. R. Co., 67 Iowa, 331, 25 N. W. 268 (action for trespass—cross action to condemn right of way); Gill v. Pelkey, 54 Ohio St. 348, 43 N. E. 991 (action for trespass—cross action to reform deed for mistake); Lincoln Trust Co. v. Nathan, 175 Mo. 32, 74 S. W. 1007 (action for rent—cross action to cancel lease); Fish v. Benson, 71 Cal. 428, 12 P. 454 (action in ejectment—cross action to cancel deed for fraud).

In a suit to quiet title a jury is not guaranteed "merely because the controversy involves the ownership and in a sense and remotely the right of possession." Foresman v. Foresman, 103 Kan. 698, 176 P. 147.

"Where the action in the main is one for rescission, but the recovery of real property, the possession of which was obtained under said contract, is also prayed for, it is not error to refuse a jury trial when the controversy hinges upon the rescission of the contract, and the recovery of possession is a mere incident to the main action." Moore v. Kelly, supra.

This question arises: (1) When either party demands a jury trial it is the duty of the trial court to determine the question as to whether it is a jury case or a nonjury case; (2) when the trial judge comes to the point of pronouncing judgment on the verdict, when the trial is before the jury, it is the duty of the court to determine whether he has the right, and it is his duty to weigh the evidence, for if it is a nonjury case he must weigh the evidence and take the responsibility for a correct determination of facts as a chancellor, whereas if it is a jury case he merely determines if there is any evidence reasonably tending to support the verdict; (3) when it comes to this court, whether the case has been tried before a jury or not, this court must determine whether it has the right to weigh the evidence, and if it is a case of equitable cognizance, it is the duty of this court to weigh the evidence and determine if the judgment of the trial court is against the clear weight of the evidence, and if it is, it is the duty of this court to reverse the judgment, otherwise it is our duty to affirm it; but if it is a jury case, this court cannot weigh the evidence, but can only look to the record to ascertain if there is any evidence reasonably tending to support the judgment, and if there is, the judgment should be affirmed, otherwise it should be reversed.

The cases of Harris v. Davis, Lee v. Terrell, Harjo v. Chilcoat, and Chouteau v. Hornbeck, supra, are, on the question of whether it is a jury case or not, squarely in point in this case, and on the strength of those cases we hold that this is properly a nonjury case, since the gravamen of the action is to cancel the deeds and reinvest title in the plaintiff. We think the trial court properly held that the defendants were not entitled to a jury trial.

2. Defendants' second contention is that the action is barred by the statute of limitations. They assert that after the taking of title by Jesse Allen in August, 1912, they were in the open, notorious, and adverse possession of the premises, claiming to be the owners thereof, and that any cause of action which Abraham

Allen had arose at that time, and was barred in August, 1927, and that the death of Abraham Allen in 1923 did not affect the running of the statute, citing Aldridge v. Caskey, 144 Okla. 204, 291 P. 91. They further contend that plaintiff reached majority on August 29, 1928, and in any event had only two years after that date within which to bring the action, and that the action not having been filed until August 28, 1933, was barred by the two-year statute also.

Defendants' third contention is that the evidence does not support the judgment, and as it is necessary to briefly summarize the evidence in order to decide each contention, we will dispose of them together.

Abraham Allen, the father of plaintiff, was a son of defendants, and was a 5/8 blood Euchee (Creek) Indian. He was of average intelligence when sober, and had received some education. He was allotted the land in controversy as his surplus allotment. He attained his majority in 1907, at which time the only restriction upon the alienation of his surplus allotment, that of minority, was removed. He had several brothers and sisters, and the allotments of the children, and of one or both of the defendants, appear to have been adjoining, or grouped together, and defendant Jesse Allen apparently handled the land as one farm and collected the rents. Abraham Allen appears to have been addicted to the use of intoxicants in excessive quantities, and apparently Jesse Allen continued to farm and look after Abraham's land after he reached majority in the same manner as he did while Abraham was a minor, except perhaps for a short period of time. The father paid the taxes at all times from 1908 onwards, and for the most part collected the rentals. While there is some conflict in the testimony in regard to the handling of the land after Abraham reached majority, it is a fair inference that Jesse Allen continued to manage it although Abraham lived on the farm one or more years and farmed it in an indifferent manner. Abraham married the mother of plaintiff

in 1909, and plaintiff was born in 1910. Her mother left Abraham on July 4, 1911, and on April 24, 1912, brought a suit for divorce and $1,000 for plaintiff's support. On July 24, 1912, Abraham gave one Purdy a warranty deed to 80 acres of his surplus allotment, the deed reciting a consideration of $500. On August 20, 1912, there was filed an affidavit of Abraham stating that this deed was a mortgage, made by him to secure a loan of not to exceed $120. On August 23, 1912, Purdy gave Jesse Allen a quitclaim deed to this 80 acres for a consideration of $1, one witness testifying the consideration was $500. On August 26, 1912, Abraham conveyed to Jesse the other 40 acres of his surplus allotment, the deed reciting a consideration of $500. The only evidence of the consideration for this deed was the testimony of Abraham's brother that it was $500, which was paid to attorneys to get Abraham out of some trouble he got into. On March 11, 1913, plaintiff's mother secured a decree of divorce and a judgment of $1,000 for plaintiff's support. On April 25, 1917, Abraham made a quitclaim deed to Jesse for a consideration of $1, covering the 80 acres involved in the transactions with Purdy. This deed was refiled on April 14, 1927, and as refiled included the whole 120 acres, and recited a consideration of $1 and other valuable consideration. It is not shown to have been re-executed or re-acknowledged, and the evidence regarding the reason for its refiling is vague. Abraham died in 1923. After plaintiff's mother left Abraham he lived at the home of defendants, who seem to have furnished him with what money he received, and who paid certain notes made by him. He spent some time in the army during the World War, the exact period not being shown. When he returned he continued to live at home, and to get drunk whenever he could. The quitclaim deed of April 25, 1917, appears to have been made shortly before he went into the army. After Abraham made the above specified deeds, he told several persons that the land was his, although these statements were not made in the pres-

ence of the defendants. On September 13, 1912, after he had made the deeds to Purdy and to Jesse Allen, he made an oil and gas lease covering the 120 acres, and on June 28, 1915, he made another oil and gas lease covering this land. These leases were recorded, and so far as the record shows defendants made no objections to them, nor were any steps taken to set aside or cancel them. Neither of defendants took the witness stand, although both were present at the trial. The only witness who testified as to the value of the land was the brother of Abraham, who testified that in 1912 it was worth $15 per acre.

The plaintiff and defendants stipulated respecting the execution and recording of the various instruments in writing that were recorded against this land, as related herein, for the purpose of trial, but each side reserved liberty of action respecting their contentions regarding the written instruments. The evidence in chief of the plaintiff is almost negligible on the issue of the purpose of the execution and delivery of the written instruments, and their effect; and it is our opinion that the trial judge should have sustained the demurrer thereto. However, we are not deciding this case upon that theory because the defendants did not stand on the demurrer, but introduced evidence of their own from which plaintiff is entitled to whatever benefit she may derive.

We are of the opinion, however, that the findings and judgment of the trial judge favoring the plaintiff are clearly against the weight of the evidence and must be reversed for that reason.

It is obvious that Abraham was not incompetent to transact business, whatever may be thought of his indifference to the true value of his lands. In every instance save the sale of the first 40-acre tract he sold without consulting his parents and wholly upon his own responsibility. In every instance a substantial sum of money passed, that is, a sum of such size as prevents this court from saying it was so grossly inadequate as to shock the conscience—and in every in-

stance he received the entire use and benefit of the money for which he sold the lands insofar as the purchaser was concerned. There is not a word of testimony in the record that defendants bought these various tracts in order to recover them for Abraham, or to hold for his benefit or the benefit of his estate. There is no evidence of any statement on the part of the defendants that they acquired or were holding this land for Abraham. It is true that after Abraham had sold part of the land he leased it for oil, and after he had sold most, if not all, of it he referred to the land as his when talking to third persons. However, the leased premises do not appear to have been developed, and barring the constructive notice from the recording of them there is no evidence that defendants knew of them, or that they knew that Abraham still referred to the land as his own. The evidence of some of the witnesses respecting Abraham's "shrewdness" in trading and getting "suckers" for the land traders creates a far more probable inference of a lack of ethics in regard to his own or any other sales than any inference sought to be raised out of the defendants' acts.

Irrespective of what are the allegations of plaintiff's pleadings, in her brief she asserts that a constructive trust existed in favor of her father and her as his heir. She bases this contention upon the showing she made regarding his drunken condition, amounting, as she says, to legal incompetency; plus the parental relation existing between defendants and Abraham; plus the showing she made regarding the father's management of Abraham's affairs; plus her argument that a fiduciary relation existed.

We think the proof of his ability to transact business when he was sober does much to offset the evidence regarding his drunkenness. The cases cited by plaintiff clearly state that the relation of parent to child is not of itself enough to create the inference of trust relationship. If the parental relationship is accompanied by other facts raising, in the eyes of the law, a fiduciary relationship, the trustee may not profit from his dealings

with the dependent. However, we are impressed with the fact that every case cited by plaintiff discloses that the dominant party dealt directly with, or through agents, with the dependent, whereas all of the sales herein save one were made by Abraham to some third person. The conveyances made to the father were made several years after the son reached maturity. While plaintiff criticizes these sales, she does not charge that defendants instigated them. There was no fiduciary relationship herein of the character that prevented defendants from buying for themselves the land that their son had sold to someone else. The plaintiff does not charge that defendants urged or advised Abraham to sell this land, and the very fact that all sales save one were made without their knowledge indicates that Abraham did not repose much confidence or dependence upon his parents. The strong inference from this record is that the father preferred that the son keep the property, and he had not sufficient influence on the son to induce him to keep the property.

Plaintiff states repeatedly in her brief that she is unable to produce all of the proof upon issues of fact that would enable her to prevail, and states just as often that defendants, who were in court, were the only ones who possessed knowledge of these essential facts, and they did not volunteer such information for her. Because of this silence she accuses them of a consciousness of guilt and of unfair conduct toward her. It is sufficient in answer to this to say that she could have called them as witnesses but she did not do so. Their silence did not relieve her of the burden that rested on her, and as we have already observed, we think a demurrer should have been sustained to her evidence.

The evidence by which a constructive trust may be established must be clear, strong, and unequivocal, and the safety of titles to real estate requires that the proof be of the most satisfactory and trustworthy kind. Barnes v. Morris, 105 Okla. 17, 231 P. 466, and many other Oklahoma cases.

We are of the opinion that the plaintiff's evidence in this respect does not meet the test stated, and we are further of the opinion that the trial court's findings in her favor are against the clear weight of the evidence.

Our discussion of the preceding issue renders it needless to discuss the statute of limitations feature.

The judgment is reversed and the cause is remanded, with directions to enter judgment for the defendants.

RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur. WELCH, C. J., and CORN, V. C. J., concur specially in result. HURST and GIBSON, JJ., concur in the first syllabus, but dissent as to result.

WELCH, C. J. (concurring specially in result). I agree the judgment appealed from must be reversed, but I do not concur in the reasoning of the majority opinion. I think the opinion goes contrary to statutes and former decisions.

When the jury returned its general verdict for the defendants, it was the duty of the trial judge to render judgment accordingly. Section 427, O. S. 1931, 12 Okla. St. Ann. § 696.

As the majority opinion discloses, there were issues of fact in the action, and it was an action for the recovery of specific real property and money. Therefore, the issues of fact were triable by jury and not by the court. It is expressly so provided by section 350, O. S. 1931, 12 Okla. St. Ann. § 556. It is so held in the following cases, as I construe them: Likowski v. Catlett, 130 Okla. 71, 265 P. 117; Abrams v. Neal, 178 Okla. 158, 61 P. 2d 1103; Fitz-Gerald, Adm'r, v. Lightfoot, 180 Okla. 598, 71 P. 2d 707; Halsell v. Beartail, 107 Okla. 103, 227 P. 392; Gill v. Fixico, 77 Okla. 151, 187 P. 474; Mitchell v. Gafford, 73 Okla. 152, 175 P. 227, and Lively v. Butler, 108 Okla. 225, 236 P. 18.

There was no waiver of jury. Timely demand for jury trial was made and

granted. At the close of the evidence plaintiff moved for discharge of the jury and for determination by the court as in a case triable to the court without a jury. This motion was overruled, and properly so, as I view it. It was after verdict the trial court concluded otherwise and rendered judgment contrary to the verdict. That is the reversible error, as I view it.

I am authorized to say that Mr. Vice Chief Justice CORN concurs in these views.