**HARJO** et al. v. **CHILCOAT** et al.

No. 19848. Opinion Filed Nov. 18, 1930.

Rittenhouse, Lee, Webster & Rittenhouse, Homer Neece, and Hart & Edwards, for plaintiffs in error.

Norvell & Norvell, for defendants in error Walter D. Chilcoat and Harry H. Diamond.

J. H. Hill, John R. Ramsey, B. W. Griffith, and Sol H. Kauffman, for defendant in error The Texas Company.

William H. Zwick and H. E. Oakes, for defendants in error Continental Oil Company and Marland Oil Company.

DIFFENDAFFER, C. Two of the defendants in error, Walter D. Chilcoat and Harry H. Diamond, hereinafter referred to as plaintiffs, commenced this action in the district court of Seminole county, against Benny Harjo, Lownie Harjo, Maggie Harjo, Homer Neece, the Texas Company, the Continental Oil Company, Amerada Petroleum Company, and the Marland Oil Company of Oklahoma, to quiet their title to a certain tract of land, and cancel of record a certain attorney's contract between the defendants Harjo and Homer Neece, which plaintiffs claimed was a cloud upon their title. The land involved is what was formerly the surplus allotment of Scipio, a full-blood Seminole Indian.

The pleadings are somewhat voluminous, covering some 233 pages of the case-made. The plaintiffs alleged, in substance, that Walter D. Chilcoat was the owner in fee simple of the land and in the actual and peaceable possession thereof, less an undivided one-half interest in that oil and gas royalty or mineral rights of 40 acres of the land, which was owned by plaintiff, Harry Diamond, which had been sold and conveyed to him by plaintiff, Chilcoat. They deraigned their title as follows: That the land was allotted to Scipio, a full-blood Seminole Indian, Roll No. 1310, as his surplus portion of the Seminole lands; that Scipio died intestate in 1909, seized and possessed of the land in fee simple, leaving surviving him as his sole and only heirs at law, his wife, Flora Fish, who inherited one-third, and four children, Benny Harjo, Lownie Harjo, Maggie Harjo, and Billie Harjo; that Billie Harjo died while a minor leaving no issue, never having been married, and that his interest in the land descended to his brothers and sister above named; that plaintiff Chilcoat acquired the interest of said heirs, as follows: Warranty deed from Flora Fish to R. F. Jackson, dated May 18, 1915; warranty deed from R. F. Jackson and wife to N. G. Poteet; guardian's deed

from Chili Fish, guardian of Lownie Harjo and Benny Harjo, minors to N. G. Poteet, dated May 1, 1919; guardian's deed from E. C. Aldridge, as guardian of Maggie Harjo, a minor, to N. G. Poteet, dated July 16, 1919; warranty deed from Poteet and wife to Chilcoat; also, warranty deed from Benny Harjo and Lowine Harjo to plaintiff, Chilcoat, dated July 18, 1925, and quitclaim deed from Maggie Harjo to Chilcoat, dated January 24, 1927; all of which were duly recorded in Seminole county. The petition then alleges that the Texas Company is the owner of an oil and gas mining lease, covering a part of the allotment, and that the Continental Oil Company is the owner of an oil and gas mining lease covering another part of the land; the Amerada Petroleum Company is the owner of an oil and gas lease covering another part; and the Marland Oil Company of Oklahoma is the owner of an oil and gas lease covering another part. All of which leases, plaintiffs acknowledge as valid oil and gas leases.

It is then alleged, in substance: That defendants Benny Harjo, Lownie Harjo, Maggie Harjo, and Homer Neece, all claimed some interest in said land, the exact nature of which is unknown to plaintiffs. But that said claimants asserted an attorney's contract between them and Homer Neece, purporting to be approved by the county court, which contract purports to be one whereby the defendants Harjo employed defendant Neece to take whatever steps he deems necessary in the courts and elsewhere to assert and protect the interest and rights claimed by them in and to said lands, which contract is dated July 13, 1927, and filed of record in Seminole county August 22, 1927.

It is alleged that said contract and order approving same are of no force or effect and are void, for the reason that Benny, Lownie, and Maggie Harjo had no interest in said lands, but that the instrument so placed of record casts a cloud upon the title of plaintiff, for the removal of which plaintiffs pray.

A second cause of action is then set up, wherein it is alleged that said contract was placed of record for the sole purpose of clouding the title of plaintiffs and with wanton, fraudulent, and malicious intent, and for the purpose of extorting money from plaintiffs commonly known as "blood money." Actual damages in the sum of $1,000 and punitive damages in the sum of $1,000 are prayed for. Each of said oil companies appeared and filed their answers, in which they set up their respective interest substantially as alleged in plaintiffs' petition, claiming their oil and gas leases directly, or through mesne conveyances, from Chilcoat, and each filed a cross-petition against defendants Homer Neece and the three Harjos, asking that title be quieted.

Defendant Neece, and the three defendants Benny, Lownie, and Maggie Harjo, filed their answer, wherein defendant Neece, in substance, pleaded that he was an attorney at law in good standing; that he had entered into the contract with his codefendants in good faith; that he believed that Lownie, Maggie, and Benny Harjo had a cause of action to assert their rights and protect their interest in and to said lands, and specifically denied that he took the contract, for the purpose of clouding plaintiffs' title or damaging them in any way.

They all denied that the guardian's deed mentioned in plaintiffs' petition is valid or conveys any title whatever; pleaded that all the subsequent conveyances in the way of mineral grants, oil leases, and mortgages were likewise void and of no effect, and pray that they all be canceled.

Defendants Lownie and Benny Harjo, by way of cross-petition, attack the validity of the guardian's deed executed by Chili Fish as their guardian, in that:

"Said land was advertised for sale first on the 5th day of April, 1919, and set for sale on April 19, 1919, and the sale, a public one, was held on that date. The law of this state relating to the sale of minor's interest in land, such as this sale, requires at least 15 days shall intervene between the date of the first publication of the notice of sale and the day of sale. The statute required 15 days did not intervene between April 5th and April 19th, and this is mandatory and jurisdictional, and therefore the subsequent proceedings in the way of return of sale and order of confirmation and guardian's deed are void and of no legal force or effect, and such guardian's deed is void, and all the instruments of writing accruing or arising therefrom are likewise void and of no legal force or effect, and are but clouds on the title of the defendants Lownie Harjo, Benny Harjo, and the possession thereunder is illegal."

Defendant Maggie Harjo pleaded, in substance, that the guardian's deed, whereby E. C. Aldridge, as her guardian, conveyed her interest in said land, was void, in that at the time said Aldridge was appointed as her guardian, she was a minor over age of 14 years, and that such appointment was made without notice to her, and that she knew nothing whatever of said appointment until after same was made, and that, when she did learn of it, she petitioned the coun-

ty court for his removal, which was done, and that said pretended appointment was wholly void as well as all acts done thereunder by the said Aldridge. She also alleged that Chilcoat and Aldridge had conspired together for the purpose of having Aldridge appointed as her guardian for the sole purpose of selling her interest in said land, which was not for her best interest. She further alleged that her said guardian filed his petition to sell her interest in said land on May 26, 1919, and that, on May 26, 1919, the county court set the date for the hearing of said petition for the 13th day of June, 1919, and,

"That under the laws of this state, the hearing must not be less than four weeks, nor more than eight weeks; whereas only 21 days intervened between the day setting the hearing and the day of hearing, and there was no waiver by the next of kin. And for this reason, said Maggie Harjo represents to the court that all of subsequent proceedings in the way of return of sale, order of confirmation, and guardian's deed, are void, and of no legal or equitable force or effect, and are but clouds on the title of said Maggie Harjo, as the other instruments of writing appearing of record in the office of the county clerk of Seminole county, Okla., and the possession of all persons and corporations holding thereunder is unlawful."

Copies of the probate sale proceedings were attached. Defendants Benny, Lownie, and Maggie Harjo further alleged:

"That by reason of being the sole and only heirs of the estate of their deceased father, Scipio, a deceased full-blood allottee of the Seminole Tribe, that they are now, and have been since his death, seized with fee-simple title thereto, and are entitled to the possession of the same, and said defendants say that they have been damaged in the sum to be hereafter fixed and determined by the court for the unlawful detention thereof, but in no event to be less than $10,000.

"That, after the execution of the said alleged guardian's deed aforesaid, and after Lownie Harjo, Benny Harjo, and Maggie Harjo had become adults, said Walter D. Chilcoat, one of the plaintiffs, well knowing, since he is a good business man, that his title was void in said lands, told these defendants that they had no right therein and induced them to sign quitclaim deeds, which appear of record, the consideration thereof being $25. At that time, and now, said lands were worth many times that amount. Said Lownie Harjo, Benny Harjo, and Maggie Harjo are young full-blood Indians, unaccustomed to the business affairs of life of the white man and inexperienced in land transactions, and, therefore, when said Walter D. Chilcoat induced them to execute said instruments of writing by said deceit and deception, he practiced a fraud upon said parties.

"And the said Lownie Harjo, Benny Harjo, and Maggie Harjo further show to the court that when said alleged quitclaim deeds were approved by the county court of Seminole county, they did not appear in court, and when said Walter D. Chilcoat induced said county court to approve the same, he perpetrated an actual fraud on said court by telling the judge of the county court that said Lownie Harjo, Benny Harjo, and Maggie Harjo had no interest 'n said lands.

"That the consideration paid for said lands for said alleged quitclaim deeds was wholly and totally inadequate, and such as to shock the conscience of any fair-minded person, and therefore are void and are clouds on the title of the said three Harjos, and the possession of all holding thereunder is unlawful possession."

They prayed upon final hearing:

"That all persons claiming any color of title by reason of said void guardian's deed be required to answer herein, and that upon final hearing a decree be granted canceling said guardian's deed, and all subsequent oil and gas leases, mineral grants, real estate mortgages, and whatever else there may appear of record in the office of the county clerk of Seminole county, affecting said lands as clouds upon the title of said Lownie Harjo, Benny Harjo, and Maggie Harjo, and that writ of restitution issue demanding the sheriff of this county to place them in possession; that they have judgment for whatever damages the court may find to be equitable and just for the unlawful detention thereof, and for such other and further relief as equity and good conscience may demand."

The answer and cross-petition was, on April 11, 1928, amended, wherein it was asserted, in substance, that the interest of said minors in said land was sold for a sum much less than its then actual value, and the validity of the subsequent deeds made by said defendants after they obtained their majority was attacked on the grounds of alleged fraud in the procurement thereof, in that Chilcoat advised said defendants that they had no interest in said lands, and thereby induced them to execute said deeds for a consideration of but $50 to each defendant, which they allege was a grossly inadequate consideration, but the allegations of fraud practiced upon the county court in the procurement of the approval of the deed were omitted, they alleging only that they did not appear and request the approval of said deeds.

The Texas Company, the last of defendants to reply to the amended answer and cross-

petition, filed its reply on May 14, 1928. The cause was set for trial for the 31st day of May, 1928. On said date defendants filed the following motion:

"Motion for Leave to File Amended Answer to Cross-Petition.

"Comes now the defendants Bennie Harjo, Lownie Harjo, and Maggie Harjo and Homer Neece, and asks leave of the court to file an amended answer and cross-petition and for grounds of such motion alleges and states:

"That these attorneys representing the said defendants, and especially these full-blood Indian heirs, and defendants, have just come into the case, and have not had sufficient time to fully acquaint themselves with the merits and facts on which the case is supposed to rest; that certain elements of fraud and deceit have come to the attention of these defendants in which the said Walter D. Chilcoat was a part and parcel and participated in the securing of the title in and to the lands and tenements herein involved, and said Harjo, Lownie Harjo, and Maggie Harjo want and desire time to so work up such elements and more perfectly present them to the court, and in the present state of the record these defendants would be denied the advantage of whatever nature and effect the said elements of fraud would give them if forced to trial at this time.

"Wherefore, premises considered, the said defendants pray that they be permitted to file an amended answer and cross-petition to the petition of the plaintiff herein for the reason set forth in this motion."

At the same time, the defendants filed a motion requesting the trial judge to certify his disqualification, and therein stated:

"That the said George C. Crump, the present district judge of Seminole county, was associated with one H. W. Carver as attorney of record in a certain probate proceeding pending in the county court of Seminole county, Okla., the same being No. 1189, on said probate docket, and involved the estate of these defendants, a portion of which is the lands and tenements involved in this controversy, and at the said time the relationship of attorney and client existed between the said George C. Crump, now district judge, and one Bennie Harjo, a minor and part owner of the lands now involved in this controversy, and that the issues involved in this controversy grow out of said guardianship matters and proceedings, in which the said George C. Crump was attorney of record for one of the litigating parties herein, to wit, Bennie Harjo.

"Louis A. Ledbetter,

"Phillips & Huggins, Attys. for dfts."

The latter motion was presented first, Mr. Huggins, of the firm of Phillips & Huggins, appeared in behalf of said motion. Upon being questioned as to whom he represented, he stated that he represented the three Indians, Benny Harjo, Maggie Harjo, and Lownie Harjo. When asked as to whether or not he represented defendant Neece, he replied "May be Mr. Phillips knows something about Homer Neece, I don't know anything about it."

The judge, George C. Crump, declining to certify his disqualification, a hearing was had and testimony was taken, whereby it was made to appear that, on August 21, 1922, about three years after the date of the guardian's deed, whereby the interests of Benny and Lownie Harjo in said land were conveyed to a N. G. Poteet by Chili Fish, as guardian for said minors, Benny Harjo, one of the defendants in the instant suit, filed his petition in the county court of Seminole county, Okla., asking for the removal of Chili Fish as his guardian, showing that Chili Fish had been appointed as his guardian in April, 1910, at which time Benny Harjo was under the age of 14 years; that he was then, in 1922, 18 years of age, and was dissatisfied with Chili Fish as his guardian, and requested the court to appoint one Mason Davis as his guardian. The petition was signed "Bennie Harjo." On the back thereof was the following endorsement: "Crump & Carver, Attys. for Petitioner."

It was shown that Crump, of the firm of Crump & Carver, was the Hon. Geo. C. Crump, trial judge in the instant case. It was further shown that H. W. Carver was the other member; that he lived at Holdenville, Hughes county; that the partnership began in June, 1921, and terminated in November, 1922; that Mr. Carver had filed the petition for removal and procured the removal of the guardian as requested; and, as a rule, Mr. Crump did not have anything to do with probate matters handled by the firm in Seminole county; that this matter was the only business said firm ever had for Bennie Harjo, and that Mr. Crump did not personally appear in the matter. This was the only way in which Mr. Crump was in any way connected with the case. At the close of the evidence on the motion, the following proceedings were had:

"The Court: Now, at the close of this testimony, do you think the court is disqualified? Mr. Huggins: Really, I think so, your honor. The Court: The motion will be denied. Mr. Huggins: Just allow us to take an exception at this time, please, and ask for a jury trial. Then I have a motion in there for the privilege of asking permission for time to file an amended an-

swer and cross-petition. Now, there has been certain things connected with the case that I have not been able to ascertain, but there has been a mortgage filed and it is not due so far as my clients. It is due so far as certain parties are concerned, and without permitted to go into it—there are certain elements been set up in the motion, and we would like to have the opportunity of a few days to make investigation of that voluminous state of papers there. The Court: The motion to file an amended cross-petition and answer will be denied. Mr. Norvell: Comes now the plaintiff and dismisses its cause of action for damages in this case against Bennie Harjo, Maggie Harjo, and Lownie Harjo. The Court: Motion sustained. Cause dismissed as to them."

Thereupon some evidence was taken upon the question of the right of Mr. Huggins to represent the three Indian defendants, and the cause was continued to June 1, 1928, at which time the cause was tried to the court resulting in a finding and judgment for plaintiffs, and in favor of each of said oil companies, and quieting their respective titles, and canceling of record the attorney's contract.

From these findings and the judgment, defendants Benny Harjo, Lownie Harjo, and Maggie Harjo appeal.

Three questions are presented:

(1) Alleged error in the trial judge overruling the request that he certify his disqualification; (2) overruling the request of defendants for leave to file amended answer and cross-petition and grant a continuance for that purpose, and (3) refusal of a jury trial.

There was no sufficient showing of disqualification. The mere fact that the law firm, of which the trial judge was a member, had represented one of the defendants in the matter of the removal of his guardian, at a time long after the sale of the land had been consummated, would not show such an interest in the present cause or proceeding as to disqualify the trial judge within the meaning of sec. 2629, C. O. S. 1921, nor would it amount to a disqualification at common law. Title Guaranty Co. v. Slinker, 35 Okla. 128, 128 Pac. 696, and cases therein cited.

No judge should preside at the trial of any cause in which he is not wholly free, impartial, and disinterested. But, in order to show such interest as would disqualify the trial judge for having been of counsel, it is necessary that he should have been connected directly or indirectly in a professional capacity as counsel for one of the parties in connection with the subject-matter involved in the action, or some matter so closely related thereto, so as to naturally tend to sway him in some matter likely to be presented to him in the course of the cause.

It was not shown that the trial judge had ever been of counsel for either side in the cause or proceeding then before the court. Nor was there called in question the validity of any judgment or proceeding in which he or his firm was of counsel or interested, nor was there called in question the validity of any instrument or paper prepared or signed by him, or his firm, as counsel or attorney. In Carr v. Fife, 156 U. S. 494, 39 L. Ed. 508, it was held:

"The fact that a circuit judge, prior to his appointment, had been counsel for one of the parties in matters not connected with the case on trial, does not disqualify him from trying the cause."

Next presented is alleged error in denying defendants leave to amend their answer and cross-petition, and continue the cause in order to allow them time so to do. These questions are presented together, and in their brief defendants say:

"We concede that, ordinarily, the question as to whether or not a party shall be allowed to amend his pleadings, or shall be granted a continuance on account of the facts shown to have existed in the instant case, is one lying within the discretion of the court."

There are many cases which hold that the allowance of amendments to pleadings is largely within the sound discretion of the trial judge. But the application in the instant case was more in the nature of an application for a continuance than an application for leave to amend the pleadings. Doubtless, the court would have granted leave to amend had the defendants presented the amendment they desired to make. This is usually done, and it is seldom that a request to amend is denied, where no delay is to be caused thereby, and when the amendment to be made is presented to the court so that he may decide whether or not the amendment is proper, or, at least, the nature of the amendment is stated. Here, however, defendants, after stating to the court that Mr. Ledbetter and the firm of Phillips & Huggins had just come into the case and had not had sufficient time to fully acquaint themselves with the merits and facts upon which the case was supposed to rest, without in any way attempting to account for the absence of Mr. Homer Neece, the attorney who had the written contract with said Indians, and which was the real cause of the lawsuit, stated:

"That certain elements of fraud and deceit have come to the attention of these defendants in which the said Walter C. Chilcoat was a part and parcel and participated in the securing of the title in and to the lands and tenements herein involved, and said Harjo, Lownie Harjo and Maggie Harjo, want and desire time to so work up such elements and more perfectly present them to the court, and, in the present state of the record, these defendants would be denied the advantage of whatever nature and effect the said elements of fraud would give them if forced to trial at this time."

So, in fact, the application was for a continuance in order that defendants might "work up such elements and more perfectly present them to the court," etc.

Defendants certainly should have stated to the court at least the general nature of the supposed elements of fraud which they desired to "work up," or at least enough thereof so that the trial court could see a reasonable necessity for granting the request. It is apparent from the reluctance of the attorney to be more definite as to the nature of the "elements of fraud" he desired to "work up," that what was desired was time, with the hope of discovering some element of fraud that had not been set up in their original and amended answer and cross-petition. Homer Neece's contract with them had been executed on the 20th day of July, 1927, more than ten months before the date of trial, and this was certainly time enough to investigate the supposed elements of fraud.

In 6 R. C. L. 544-5, the following is said, with reference to continuances:

"The fundamental p r i n c i p l e running throughout the subject of continuances is that the granting or refusal of a continuance rests in the discretion of the court to which the application is made, and that its ruling in reference thereto will not be disturbed by an appellate tribunal unless an abuse of discretion is shown. This is because the lower court is apprised of the circumstances of the case and the previous proceedings, and is. therefore, in a better position to decide on the propriety of granting the application than the appellate court."

Where contracts of this nature are executed and placed on record, thus casting an apparent cloud upon the title of those holding possession of real estate under guardian's deed, and also deeds made by the claimants after attaining their majority, one claiming under such contract should be held to a prompt assertion of whatever rights are claimed.

There was clearly no abuse of discretion

in denying the request for leave to amend, coupled as it was with a request for a continuance.

It is next contended that the trial court erred in refusing the defendants a jury trial.

At the time the court denied defendants' request for time to file amended pleadings, they requested a jury trial. As the pleadings stood, defendants were entitled to a jury trial on the issues raised in the second cause of action set up in plaintiffs' petition, wherein they prayed for damages for clouding their title with the attorney's contract. After defendants requested a jury trial, plaintiffs dismissed their second cause of action. This took away the issue in plaintiffs' case upon which either party was entitled to a jury. Thereupon, some evidence was taken as to the employment of Mr. Huggins by the three Indian defendants, whereby it was made to appear that Phillips & Huggins did not represent the defendant Homer Neece, but represented only the defendants Benny, Maggie, and Lownie Harjo. Thereupon the case was passed until the next day, June 1, 1928, at which time the cause went to trial before the court without a jury, and without anything further being said about a jury.

Plaintiffs contend that defendants thereby waived a jury, and insist that this is shown by their failure to present this particular question in their motion for a new trial. The question was not specifically raised in the motion for new trial. If defendants were entitled to a jury trial, as the issues stood after the dismissal of plaintiffs' second cause of action, it may become necessary to determine whether or not they waived the right, but if they were not entitled to a jury trial, a determination of the question becomes unnecessary.

In Larkin v. Wilson, 28 Kan. 513, it was held:

"Where an action is brought to quiet title against a party out of possession of real estate. and the defendant sets up a counterclaim in the nature of ejectment, to which a general denial is filed, the defendant is not entitled. as a matter of right, to a jury trial. * * *"

That case was followed in Hartsog v. Berry, 45 Okla. 277, 145 Pac. 328, wherein it was held:

"Where a party in possession of real estate brings an action to rescind a contract, cancel the deed thereof, and to. quiet title, and the defendant's answer is in the nature of ejectment, to which a general denial is filed. the suit is one in equity. and the plaintiff is not entitled, as a matter of right, to a trial by jury."

The rule was somewhat modified in Moore v. Kelley, 57 Okla. 348, 157 Pac. 81, where the right to a jury trial was made to depend somewhat upon the main issue in the case, and wherein it was held:

"Where the action in the main is one for rescission, but the recovery of real property, the possession of which was obtained under said contract, is also prayed for, it is not error to refuse a jury trial when the controversy hinges upon the rescission of the contract, and the recovery of possession is a mere incident to the main action."

The rule that the right to a jury depends on the main issue involved was recognized and followed in Grace v. Hildebrandt, 110 Okla. 181, 237 Pac. 98, wherein plaintiff sued to quiet title by cancellation of record contract by which defendant claimed interest in land, relying on a will, devisee's deed, and mesne conveyances. Defendant, by cross-petition, alleged the will was inoperative as to her, alleged ownership of aliquot part of the land, prayed for cancellation of the plaintiff's muniments as to her part, and for accounting of rents, etc. Therein it was held:

"The primary purpose of defendant's action against plaintiff was the recovery of specific real estate, her other grounds of relief being but incidental thereto."

And further:

"Since such was the primary purpose of defendant's action, defendant was, under section 532, Comp. Stat. 1921, entitled to a jury trial on the issues of fact thereto arising, and it was error for the court to refuse same on timely demand of defendant therefor. That the issues arose on cross-petition of defendant does not alter such right."

The latter case modifies the rule announced in Larkin v. Wilson, supra, followed in Hartsog v. Berry, supra.

The rule announced in Moore v. Kelley, supra, was recognized and followed in Aldridge v. Anderson, 115 Okla. 131, 240 Pac. 99, wherein the right to a trial by jury was made to rest upon which was the principal and which an incidental cause of action. It was there held, in effect, that where the principal cause of action is one for the recovery of real property, or an interest therein, and the other causes of action are made to depend entirely upon the right of recovery in the principal causes of action, the issues therein are properly triable before a jury.

The right to a trial by jury in cases involving real estate is discussed at length in Warner v. Coleman, 107 Okla. 292, 231 Pac. 1053, where it was held:

"It is not every action involving the title to real property where trial by jury is a matter of right; but section 4993, Rev. Laws 1910, gives the right of trial by jury, as to issues of fact arising in actions for the recovery of specific real property, and where the gravamen of the action is other than one for relief as in ejectment at common law, or is for an equitable remedy such as rescission, the right to a jury is not given by statute."

In Green v. Correll, 133 Okla. 94, 271 Pac. 241, it was held:

"The character of an action is determined by the nature of the issues made by the pleadings and the rights and remedies of the parties and not alone by the form in which the action is brought or by the prayer for relief."

In Moschos v. Bayless, 126 Okla. 25, 258 Pac. 263, the gravamen of the action, or the "paramount issue," was recognized as controlling the nature of the action as a whole, and to determine whether or not a right to a trial by jury is given by statute. It was therein held:

"Where, in an action, the paramount issue as formed by the pleadings is one of equitable cognizance and there exist certain issues of fact arising out of a demand for the recovery of money which are incidental to and dependent upon the equitable issue, said action is an equitable action."

"Where the gravamen of the action is of equitable cognizance, or the relief sought is an equitable remedy, such as the cancellation of an oil and gas lease, the right to a jury trial is not given by statute."

Without regard to whether the guardian's deeds were valid, void, or voidable, defendants' right to recover an interest in, and incidentally possession of, the lands in controversy, depended entirely upon their right to have canceled the deeds which they admit they executed after attaining their majority. Without this their claims to an interest in the land must necessarily fail. It follows, then, that the paramount issue as formed by the pleadings was as to their right to have those deeds, as well as the guardian's deeds, set aside and canceled. Upon the determination of this issue depended their right to recover any interest in the land. This was clearly an issue of equitable cognizance, and, under the rule announced in Moore v. Kelley, supra, Aldridge v. Anderson, supra, and recognized in Warner v. Coleman, supra, and Green v. Correll, supra, defendants were not entitled, as a matter of law, to a trial by jury.

This case is unlike Likowski v. Catlett, 130 Okla. 71, 265 Pac. 117, wherein it is pointed out that the action was not one to

rescind, but one wherein the contention was that the deed was wholly void. Where the deed sought to be canceled is wholly void, no title passes thereby, and its cancellation is not essential to establish the title of one claiming adversely to such deed.

There was no error in proceeding to trial without a jury.

The judgment should be affirmed.

TEEHEE, REID, HERR, and LEACH, Commissioners, concur.

By the Court: It is so ordered.